

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-176-CV

GUIDEONE LLOYDS INSURANCE COMPANY        APPELLANT

V.

FIRST BAPTIST CHURCH OF BEDFORD        APPELLEE

------------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

Appellee First Baptist Church of Bedford ("FBCB") filed a motion for rehearing of our opinion issued on July 17, 2008. Appellant GuideOne Lloyds Insurance Company ("GuideOne") also filed a motion for rehearing. We grant FBCB's motion for rehearing in part, withdraw our opinion and judgment dated July 17, 2008, and substitute the following in its place. We deny GuideOne's motion for rehearing.

## I. INTRODUCTION

GuideOne appeals from a jury verdict rendered in favor of FBCB for damages arising out of a 2003 claim for hail damage to FBCB's roof. In four issues, GuideOne argues that the trial court erred by disregarding the jury's finding that GuideOne unconditionally tendered funds to FBCB after suit had been filed, that the trial court erred by awarding FBCB prejudgment interest at the incorrect rate, and that the trial court abused its discretion by denying GuideOne's requested jury charge questions and instructions and by denying GuideOne's motion for new trial. We will modify the judgment in part and affirm as modified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

GuideOne issued an insurance policy insuring FBCB's commercial property for certain physical losses, including hail damage. The policy insured for replacement cost coverage, which allowed for roof replacement, if needed, and provided for code upgrade coverage and for emergency repair expenses.

A severe hail storm damaged FBCB's roof on April 5, 2003. The Texas Department of Insurance determined that the "weather-related events occurring on April 5, 2003 through April 6, 2003" were "a catastrophe for the purpose of claims processing." FBCB notified GuideOne of the loss on April 30, 2003.

In May 2003, a GuideOne adjuster inspected the roof, acknowledged that the roof had been damaged by hail, and indicated that an engineer would have to assess the damage to the roof. An individual with Haag Engineering ("Haag") inspected the roof for GuideOne a few weeks thereafter. Haag's June 23, 2003 report and the June 26, 2003 claim log notes of Sandee Stolowski, the GuideOne adjuster handling FBCB's claim, indicate that Haag had determined by its inspection that all sections of the roof had scattered hail-caused damage and that the roof could not be repaired but had to be replaced. Indeed, FBCB's roof—which consists of two roofing systems, a three-ply built-up roof with a rock-gravel ballast below a modified bitumen asphalt roof—began leaking after the April 2003 hail storm, causing ceiling panels and carpet inside to become stained. The roof did not leak before the April 2003 storm.

Precision Roofing ("Precision") subsequently inspected the roof on behalf of GuideOne to prepare an estimate to repair the roof. Precision's estimate, which was faxed to GuideOne on August 28, 2003, estimated a cost of approximately $104,000 to repair the roof. Meanwhile, FBCB had enlisted Year Around Roofing, Inc. ("Year Around") to inspect its roof and submit an estimate too. Year Around's August 7, 2003 estimate indicated a cost of approximately $170,000 to replace the roof. Year Around later submitted a revised estimate, which included a cost of $42,000 for an R-19 insulation upgrade, which FBCB

3

claimed the City of Bedford required in connection with the roof repairs. GuideOne questioned whether the R-19 upgrade was necessary for commercial construction.

In late September 2003, Stolowski prepared a Property Captioned Report with an "Action Plan" indicating that she planned to seek approval to pay an amount equal to Precision's estimate of approximately $104,000, less depreciation of $17,634.22. Also in late September or early October 2003, an FBCB representative and Billy Owens, a GuideOne senior property claims specialist, met with a few others at FBCB in an effort to reconcile the respective estimates that had been submitted on the roof. At the meeting, it "was expressed [by GuideOne] that [FBCB] didn't need a new roof, that all we needed to do was spray some . . . silver paint type mastic over it." Thereafter, on October 22, 2003, Stolowski notified FBCB that GuideOne wanted to take samples of the roof to have them analyzed to determine the covered damages. According to GuideOne, "[i]f the hail did not allow the water to penetrate, th[e]n what we would owe is to spot repair any damaged hits and re-coat with a similar silver coating as well as combing the A/C coils and any other hail damage." Owens testified that GuideOne had determined at some point around this time that it at least needed to replace the top of the roof; however, Owens questioned whether GuideOne needed to upgrade the insulation and replace the

4

lower levels of the roof, which consisted in part of a steel metal decking layer that had corroded. GuideOne sent another letter on November 24, 2003, referencing the October letter and inquiring whether FBCB was in agreement.

GuideOne sent a letter dated December 26, 2003, to FBCB indicating for the first time that "the replacement cost of your claim is $104,437.62 . . . . The applicable depreciation is $17,634[.]11 less your policy's applicable $1000.00 deductible, [which] results in a net payment in the amount of $85,803.40. Please be advised [that] your recoverable depreciation is $17,634.22." The letter additionally provided that FBCB had "180 days from the date of [the] loss to complete the work and collect the recoverable depreciation and debris removal under your insurance policy." The letter further directed FBCB to the Appraisal portion of the policy, and it included a check in the amount of $85,803.40. FBCB interpreted GuideOne's letter as a settlement offer and consequently declined to accept the check because, according to FBCB, doing so would not have allowed FBCB to collect other amounts that it was entitled to collect on the claim, including sufficient funds to cover the R-19 insulation.

FBCB's attorney sent a letter to GuideOne dated March 17, 2004, offering to settle the claim for $211,497, which consisted of $206,497 for repair costs, including the R-19 upgrade, and $5,000 for attorney's fees. At

5

a meeting between GuideOne and FBCB on April 20, 2004, GuideOne offered to repair the roof for $164,000, to pay approximately $7,000 for temporary repairs to the roof, and to pay reasonable attorney's fees. GuideOne's offer did not include payment for the R-19 upgrade. FBCB declined GuideOne's offer to repair the roof, but it accepted GuideOne's check covering the approximately $7,000 in temporary repairs to the roof.

In July 2004, FBCB forwarded to GuideOne a letter addressed to it from the City of Bedford stating that "insulation installed continuously over the roof framing shall have R-19." GuideOne acknowledged at trial that it learned in July 2004 that a state statute required the installation of the R-19 insulation, but it did not offer to pay for the insulation upgrade before FBCB filed suit on August 20, 2004, for breach of contract, breach of duty of good faith and fair dealing, violations of former articles 21.21 and 21.55[1] of the Texas Insurance Code, and for violations of the Deceptive Trade Practices Act ("DTPA").

---

[1] *See* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.03, 1991 Tex. Gen. Laws 939, 1043–45, *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (current version at Tex. Ins. Code Ann. §§ 542.051–.061 (Vernon 2007)). Article 21.55 was repealed and recodified effective April 1, 2005. However, because former article 21.55 is applicable to this case, we will hereafter refer to the pertinent sections as they were previously codified.

By letter dated July 7, 2005, and "in response" to an FBCB settlement offer, GuideOne offered $155,000 as an "amount calculated as the 'like kind' roof replacement estimate from Precision Roofing, less depreciation and FBCB's deductible, then adding the current replacement cost of the R-19 insulation upgrade, and an additional amount for attorney's fees." FBCB rejected GuideOne's "settlement offer," which GuideOne referred to as an "unconditional tender" in both the letter and subsequent correspondence.

A jury awarded FBCB damages in the amount of $286,596.63 on FBCB's breach of contract claim, $60,000 on FBCB's article 21.21 claims, $30,000 based on an affirmative finding that GuideOne's article 21.21 violations were committed knowingly, $30,000 in actual damages and $55,000 in exemplary damages on FBCB's breach of duty of good faith and fair dealing claim, and $100,000 in attorney's fees for preparation and trial.[2] The jury additionally found that although GuideOne did not make an unconditional tender of $85,803.40 to FBCB on December 26, 2003, "to apply toward repairs of the covered April/May 2003 hail damage to the roof with like kind or quality and to upgrade the roof with R-19 insulation," GuideOne had made an unconditional tender of $155,000 to FBCB on July 5, 2005. FBCB moved for judgment on

---

[2] The jury also awarded FBCB $12,000 for an appeal to the court of appeals and $5,000 for an appeal to the supreme court of Texas.

the jury's affirmative breach of contract and article 21.21 findings, on its article 21.55 claim for interest, and on the jury's attorney's fees finding. FBCB did not move for judgment on the jury's affirmative breach of duty of good faith and fair dealing findings, and it moved the trial court to disregard the jury's finding that GuideOne made an unconditional tender of $155,000 to FBCB on July 7, 2005.

GuideOne filed a motion for new trial on January 2, 2007. The trial court did not rule on the motion but instead signed a judgment on March 9, 2007, awarding FBCB the following amounts:

> $765,105.44, consisting of actual damages in the amount of $346,596.63 ($286,596.63 on Plaintiff's breach of contract claim and $60,000 on Plaintiff's claims under article 21.21 of the Texas Insurance Code); 18% interest under article 21.55 of the Texas Insurance Code of $188,398.71; 8.25% common law prejudgment interest of $80,637.23 on Plaintiff's breach of contract damages; 8.25% common law prejudgment interest [of] $16,639.92 on Plaintiff's article 21.21 damages of $60,000; additional damages of $30,000; attorney's fees of $100,000 through trial, and court costs of $2,832.95.

By its award of $188,398.71 as an eighteen percent statutory interest penalty on the full amount of the $286,596.63 award for GuideOne's breach of the insurance contract—beginning on July 15, 2003 and continuing through the date the trial court signed the judgment—the trial court disregarded the jury's finding that GuideOne made an unconditional tender to FBCB on July 5, 2005.

8

The judgment also awards FBCB appellate attorney's fees and postjudgment interest.  GuideOne appeals.

### III. UNCONDITIONAL TENDER AND STATUTORY INTEREST PENALTY ACCRUAL

GuideOne asserts three separate arguments in its first issue relating to the trial court's eighteen percent penalty interest calculation of $188,398.71. GuideOne first argues that the trial court erred by disregarding the effect of the jury's finding that GuideOne made an unconditional tender of $155,000 on July 7, 2005.  GuideOne contends that but for the trial court's erroneous decision to disregard the finding, the statutory interest penalty would have ceased to accrue on July 7, 2005, in the amount of $155,000.  GuideOne alternatively argues that FBCB is not entitled to recover any statutory interest penalty whatsoever because FBCB failed to secure a jury finding determining the statutory interest penalty's accrual date, which GuideOne argues is fifteen days after the insurer receives all items, statements, and forms required to determine a final proof of loss.  Assuming that FBCB is entitled to recover a statutory penalty without having secured a finding of the accrual date, GuideOne additionally argues that the accrual date is January 10, 2004, not July 15, 2003, which is the accrual date that the trial court utilized in computing the amount of the interest penalty.

9

## A.     Article 21.55

Article 21.55 imposes requirements on an insurer with respect to responding to claims, accepting or rejecting claims, and promptly paying accepted claims.  *See* former Tex. Ins. Code Ann. art. 21.55, §§ 2, 3, 4; *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007).  Article 21.55 also prescribes penalties for an insurer's noncompliance.  Tex. Ins. Code Ann. art. 21.55, § 6; *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 769 (Tex. App.—Fort Worth 2006, pet. denied).  The purpose of article 21.55 is to obtain prompt payment of claims pursuant to policies of insurance, and its provisions are to be liberally construed to promote this purpose.  Tex. Ins. Code Ann. art. 21.55, § 8.

Specifically, article 21.55 mandates that an insurer shall, not later than the fifteenth day after receipt of notice of a claim, (1) acknowledge receipt of the claim, (2) commence any investigation of the claim, and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant.  *Id*. § 2(a).  An insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the fifteenth business day after the insurer receives all relevant items, statements, and forms required by the insurer in order to secure final proof of loss.  *Id*. § 3(a).  If an insurer is unable to accept or reject the claim within the

10

period specified in section 3(a), the insurer must notify the claimant not later than the period specified in section 3(a) and accept or reject the claim not later than the forty-fifth day after the date the insurer notified the claimant of its initial inability to accept or reject the claim. *Id*. § 3(d), (e).

Regarding damages, if an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required as provided under section two for more than sixty days, the insurer shall pay damages as provided for in section 6 of article 21.55. *Id*. § 3(f). Section 6 provides, "In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefore is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy . . . 18 percent per annum of the amount of such claim." *Id*. § 6. Accordingly, to successfully maintain a claim under section 6, a party must establish (1) a claim under an insurance policy, (2) that the insurer is liable for the claim, and (3) that the insurer has failed to follow one or more sections of article 21.55 with respect to the claim. *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001); *Protective Life Ins. Co. v. Russell*, 119 S.W.3d 274, 286 (Tex. App.—Tyler 2003, pet. denied).

**B.      Unconditional Tender Finding**

The trial court calculated the eighteen percent interest penalty based on the entire amount of damages found by the jury for GuideOne's breach of the insurance policy—$286,596.63—beginning July 15, 2003 and running to March 9, 2007, the date of the judgment.  GuideOne argues that the trial court erred by disregarding the effect of the jury's finding that it made an unconditional tender of $155,000 on July 7, 2005.  *See Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 425–26 (Tex. 2004).  We agree.

A trial court may disregard a jury finding if there is no evidence to support the jury's finding or if it is immaterial.  *Se. Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999); *Dunnagan v. Watson*, 204 S.W.3d 30, 39 (Tex. App.—Fort Worth 2006, pet. denied).  A no evidence challenge may be sustained when the evidence establishes conclusively the opposite of a vital fact.  *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied,* 526 U.S. 1040 (1999).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Dunnagan*, 204 S.W.3d at 40.

Under article 21.55, the amount of the "claim" on which a penalty is calculated is the amount ultimately determined to be owed to the claimant, less any partial payments made.  *Mex-Tex*, 150 S.W.3d at 426–28; *Fire Ins.*

12

*Exchange v. Sullivan*, 192 S.W.3d 99, 109 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Thus, an insured is entitled to the penalty interest on the difference between the amount of the claim as determined to be owed and the amount the insurer unconditionally tendered. *Mex-Tex*, 150 S.W.3d at 427–28. Conversely, the interest penalty may be assessed against the insurer on the full amount of the claim if an insurer's partial payment to the insured was not unconditional.

Here, the interest penalty could only have been assessed against GuideOne on the full amount of the claim for the full period of time used to calculate the penalty if there was no evidence to support the jury's finding that GuideOne's July 7, 2005 partial tender to FBCB was unconditional. GuideOne included a check in the amount of $155,000 with its July 7, 2005 letter addressed to FBCB's attorney, which states in pertinent part as follows:

> This letter is written in response to your correspondence of June 17, 2005, in which you conveyed First Baptist Church of Bedford's ("FBCB") settlement offer ---------. *In response, GuideOne offers $155,000*. This amount is calculated as the "like kind" roof replacement estimate from Precision Roofing, less depreciation and FBCB's deductible, then adding the current replacement cost of the R-19 insulation upgrade, and an additional amount for attorney's fees.

> Tendered with this letter is GuideOne's check . . ., in the amount of $155,000. *This is an unconditional tender of funds*, although it represents an amount which GuideOne believes is sufficient to extinguish its obligations to [FBCB]. Essentially, this

13

amount represents the same tender of funds originally made by GuideOne on December 26, 2003, as adjusted for depreciation and the addition of an R-19 insulation upgrade at current pricing.

In summary, it is GuideOne's position that the funds tendered with this letter are sufficient to address all of [FBCB's] claims arising out of the covered loss. *Regardless of whether FBCB agrees with GuideOne's position, these funds are tendered as unconditional payment of the current undisputed amount of FBCB's claim*. [Emphasis added.]

Although GuideOne stated that it was offering $155,000 in response to FBCB's June 17, 2005 settlement offer and that it opined that the amount was sufficient "to address all of [FBCB's] claims arising out of the covered loss," the letter goes on to clarify twice that the $155,000 is an unconditional tender of funds, specifically stating once that the $155,000 is payment of the "current undisputed amount of FBCB's claim," thus implicitly recognizing that there remained a disputed amount of money on the claim, which had yet to be completely settled. This is not language supporting FBCB's interpretation that GuideOne intended the $155,000 to be conditional. *See Mex-Tex*, 150 S.W.3d at 427 (holding that, for request to be conditional, the evidence must establish an assent of the parties to an agreement that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim). Rather, it is some evidence supporting the jury's finding that GuideOne unconditionally tendered $155,000 to FBCB on July 7, 2005. *See id*.

14

Citing information contained in an unredacted version of the July 7, 2005 letter in the clerk's record, FBCB argues that the $155,000 was not an unconditional tender because the amount was for less than the amount due according to GuideOne's own figures. However, notwithstanding that Defendant's Exhibit 15A—which is the redacted version of the July 7, 2005 letter entered into evidence and considered by the jury—does not contain the information FBCB refers to, GuideOne concluded in the unredacted version of the letter that the "revised estimate total is $153,430.42," not $189,895.30, as FBCB contends. GuideOne thus did not offer an amount less than what was due according to its own figures. Moreover, that GuideOne's tender of $155,000 on July 7, 2005, was for an amount less than that due on the claim is not dispositive of whether the $155,000 was an unconditional tender because, whether it was the need to include R-19 insulation or to replace the entire roof instead of the top level only, the record demonstrates that GuideOne contested some portion of FBCB's claim throughout much of the case; hence the divergent numbers. The same holds true for FBCB's argument that the $155,000 amount was not unconditional because GuideOne continued to contest its liability. *See id*. at 426–28 (holding that insured was entitled to statutory penalty on difference between amount of claim ($179,000) and payment tendered by insurer ($145,460), which was less than amount

15

claimed). FBCB further argues that the $155,000 was not an unconditional tender but an offer to settle the claim because the $155,000 was not tendered before FBCB filed suit. But FBCB appropriately resolves this argument against itself when it states earlier in its brief that "[a]n unconditional tender can be made at any time, even when a case is on appeal."

Because there is some evidence supporting the jury's finding in response to question fifteen that GuideOne made an unconditional tender of $155,000 on July 7, 2005, we hold that the trial court erred by disregarding the effect of the jury's finding in calculating the article 21.55 interest penalty.

The supreme court has determined that "a settlement payment should be accredited first to accrued prejudgment interest as of the date the settlement payment was made, then to 'principal,' thereby reducing or perhaps eliminating prejudgment interest from that point in time forward." *Battaglia v. Alexander*, 177 S.W.3d 893, 908 (Tex. 2005); *see also Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 816 (Tex. 2006). Therefore, in calculating the amount of article 21.55 interest to be awarded FBCB, we must determine the amount of prejudgment interest that had accrued on FBCB's breach of contract damages as of July 7, 2005 (the date of GuideOne's tender), apply GuideOne's $155,000 tender first to the amount of prejudgment interest that had accrued as of July 7, 2005, next apply any remaining balance to the principal

16

($286,596.63), and finally utilize the revised principal figure to calculate the post-tender amount of the article 21.55 interest penalty.[3]

The amount of prejudgment interest[4] that had accrued on FBCB's breach of contract damages by July 7, 2005 is $39,966.26.[5]  Applying GuideOne's $155,000 tender first to the $39,966.26 in interest that had accrued as of the time of the tender results in an amount of $115,033.74 being applied next to

---

[3] ⬆ FBCB contends in its motion for rehearing that in addition to determining the amount of prejudgment interest that had accrued as of July 7, 2005, we should also determine the amount of the article 21.55 statutory interest penalty that had accrued as of July 7, 2005, and apply the $155,000 tender to that amount too.  It contends that applying the "declining principal" formula "likewise satisfies the purpose of the 18% interest allowed under [former article 21.55 of the insurance code]."  FBCB, however, directs us to no authority indicating that the "declining principal" formula is applicable to an 18% statutory interest penalty under former article 21.55, and we decline at this time to expand upon the scope of the supreme court's application of the formula as set forth in *Battaglia* and *Brainard*.

[4] ⬆ Because we overrule GuideOne's argument that the trial court reversibly erred by entering judgment that FBCB is entitled to recover prejudgment interest at the rate of 8.25% on FBCB's breach of contract and article 21.21 awards, *infra*, we will use the 8.25% figure in calculating prejudgment interest.

[5] ⬆ This amount is calculated as follows:

• 8.25% of $286,596.63 from 10/28/2003 (180 days after written notice of the claim) to 10/27/2004 = $23,644.22

• 8.25% of $286,596.63 from 10/28/2004 to 7/6/2005 (252 days) = $16,322.04

Total: $39,966.26

17

FBCB's breach of contract damages award (the principal), which equals a post-tender figure of $171,562.89. FBCB is thus entitled to recover from GuideOne an interest penalty under article 21.55 of the insurance code in the amount of $153,735.12.[6] Accordingly, we sustain this part of GuideOne's first issue and render judgment that FBCB recover from GuideOne an interest penalty under article 21.55 of the insurance code in the amount of $153,735.12.

## C.    Accrual Date Arguments

We disagree with GuideOne's argument that FBCB is not entitled to recover any penalty interest because of the absence of a jury finding determining the penalty's accrual date. First, GuideOne's contention that the penalty interest "begins to accrue fifteen days after the insurer receives all

---

[6] This amount is calculated as follows:

• 18% penalty on $286,596.63
from 7/15/2003 to 7/14/2004 = $51,587.39

• 18% penalty on $286,596.63
from 7/15/2004 to 7/6/2005 (357 days) = $50,454.81

• 18% penalty on $171,562.89
from 7/7/2005 to 7/6/2006 = $30,881.32

• 18% penalty on $171,562.89
from 7/7/2006 to 3/9/2007 (246 days) = $20,811.60

Total: $153,735.12

18

items, statements and forms required to determine a final proof of loss" is unsupported by the plain language of article 21.55 and is erroneous. GuideOne is referencing the deadline in section 3(a) that an insurer must meet when notifying a claimant of its acceptance or rejection of a claim, not section 3(f), which provides that an insurer *shall pay damages* as set forth in section 6 if it delays payment of a claim for more than sixty days following its receipt of all items, statements, and forms *reasonably requested under section 2*. *See* Tex. Ins. Code Ann. art. 21.55, § 3(a), (f).

The evidence is undisputed that GuideOne never requested from FBCB any items, statements, and forms required within fifteen days of receiving FBCB's notice of loss on April 30, 2003. *See id*. § 2(a). This is so even considering GuideOne's claim log notes in light of section 2(b), which mandates that the insurer shall make a record of the date, means, and content of the acknowledgment if acknowledgment of the claim is not made in writing. *See id*. § 2(b). When facts are undisputed or conclusively established, there is no need to submit those issues to the jury. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 633 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). This rule applies even if the pleadings controvert the issue. *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 56 (Tex. App.—Dallas 1995, writ denied). Because

19

the evidence is undisputed that GuideOne failed to comply with section 2(a)'s information request requirement, FBCB was not required to obtain a jury finding determining when GuideOne, in compliance with section 2(a), received all items, statements, and forms reasonably requested and required pursuant to section 3(f).[7]

GuideOne argues in its reply brief that it "made a written request on October 22, 2003 to complete its investigation of FBCB's claim, including taking core samples to determine the extent of the damage." It continues, "While couched in polite terms, this letter nonetheless conveyed to FB[C]B the 'items, statements, and forms' GuideOne needed in order to reach a decision on FBCB's claim." We disagree with its argument because GuideOne's reason

---

[7] Furthermore, the trial court selected July 15, 2003, as the accrual date, which was the next day after seventy-five days from the date that FBCB notified GuideOne of its claim and, in light of GuideOne's failure to request all items, statements, and forms from FBCB, the latest date under the deadlines set forth in article 21.55 for determining the interest penalty. *See* Tex. Ins. Code Ann. art. 21.55, §§ 3(f) (setting forth sixty-day delay period), 5(d) (extending claim-handling deadlines an additional fifteen days in the event of a weather-related catastrophe); *Munoz v. State Farm Lloyds*, No. Civ.A. B-04-141, 2006 WL 1169145, at *4 (S.D. Tex. May 2, 2006) (declining to alter or amend article 21.55 award based in part on lack of jury question inquiring into penalty's accrual date because the trial court "utilized the latest possible date on which the jury could have based its finding that the Plaintiffs fulfilled all of their conditions precedent under the contract."); *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 802 (Tex. 2007) ("State Farm received Toni's claim on September 11th, so the 60-day period elapsed on November 10th.").

for sending the letter was for a purpose other than what is relevant to this issue. GuideOne's assertion that its October 22, 2003 letter conveyed to FBCB the items, statements, and forms needed "to reach a decision on FBCB's claim" is inapposite in light of section 3(a)'s revelation that the insurer shall notify the claimant in writing of its acceptance or rejection of the claim within fifteen days after it receives the items requested under section 2(a) "*in order to secure final proof of loss*." *See* Tex. Ins. Code Ann. art. 21.55, § 3(a) (emphasis added). GuideOne's letter indicated that it wanted to take core samples of FBCB's roof to determine the extent of the damage to the roof. Taking core samples of FBCB's roof may have been required to determine the extent of FBCB's loss, but it would not have been required to prove that FBCB in fact suffered a loss, which, according to the plain language of section 3(a), is required for an insurer to make its decision to accept or reject the claim. *See Colonial County Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514, 523 (Tex. App.—Corpus Christi 2000, no pet.) (holding that items requested by insurer were not required to secure final proof of loss).

The record also belies GuideOne's assertion. Stolowski prepared a Property Captioned Report with an "Action Plan" in late September 2003—weeks before GuideOne sent FBCB the October 22, 2003 letter—stating that she planned to seek approval to pay an amount equal to Precision's

21

estimate of approximately $104,000, less depreciation. It is more than reasonable to conclude that Stolowski would not have sought approval to pay the claim if GuideOne had not already "accepted" FBCB's claim within the meaning of section 3(a). Accordingly, we overrule this part of GuideOne's first issue.

GuideOne alternatively argues that the trial court should have determined that the interest under article 21.55 section 6 began to run on January 10, 2004—fifteen days after December 26, 2003, the date that GuideOne "decided and tendered the undisputed portion of FBCB's claim,"—instead of July 15, 2003. GuideOne's reasoning is solely as follows:

> In response to Question No. 14, the jury found that GuideOne's December 26, 2003 tender of payment on FBCB's claims was not unconditional. Impliedly, the jury's finding means that GuideOne was in a position to determine a final proof of loss on that date. Therefore, any interest penalty would begin running fifteen days later, January 10, 2004 . . . ."

We disagree.

A jury's failure to find a particular fact merely means that the proponent failed to meet its burden of proving the fact by a preponderance of the evidence. *C & R Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966); *Dunnagan*, 204 S.W.3d at 40. It does not mean the reverse of the failed fact finding. *Dunnagan*, 204 S.W.3d at 40.

22

The jury's finding in question fourteen that GuideOne did not unconditionally tender $85,908.40 to FBCB on December 26, 2003, merely means that GuideOne did not meet its burden of proving by a preponderance of the evidence that it unconditionally tendered $85,908.40 to FBCB on December 26, 2003.  It does not mean or imply anything else, including that GuideOne was in a position to determine a final proof of loss on that date.  *See Campbell*, 406 S.W.2d at 194.  Accordingly, we overrule the remainder of GuideOne's first issue.

## IV.  PREJUDGMENT INTEREST RATE

In its second issue, GuideOne argues that the trial court reversibly erred by entering judgment that FBCB is entitled to recover prejudgment interest at the rate of 8.25% on FBCB's breach of contract and article 21.21 awards. Relying on section 302.002 of the finance code, it contends that FBCB is entitled to prejudgment interest at the statutory rate for contract claims, which is six percent yearly for a breach of contract case in which no rate is specified in the contract.

Section 302.002, which is located under subchapter A of chapter 302, titled, "Usurious Interest," provides as follows:

> If a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal

23

amount of the credit extended beginning on the 30th day after the date on which the amount is due.

Tex. Fin. Code Ann. § 302.002 (Vernon 2006). "Creditor" is defined as a person who loans money or otherwise extends credit. *Id*. § 301.002(a)(3). "Obligor" is defined as a person to whom money is loaned or credit is otherwise extended. *Id*. § 301.002(a)(13). The definition of creditor does not include a judgment creditor, and the definition of obligor does not include a judgment debtor. *Id*. § 301.002(a)(3), (13)(A). A "judgment creditor" is a person to whom a money judgment is payable, and a "judgment debtor" is a person obligated to pay a money judgment. *Id*. § 301.002(a)(5), (6).

Here, FBCB did not loan money or extend credit to GuideOne, and GuideOne is not one to whom FBCB loaned money or extended credit. Rather, FBCB is one to whom a money judgment is payable, and GuideOne is one obligated to pay a money judgment. Thus, as defined by section 301.002, FBCB is not a creditor and GuideOne is not an obligor. We also note that the term "legal interest" does not include judgment interest, which is interest—as in this case—that accrues on a money judgment before, on, or after the date the judgment is rendered. *See id*. § 301.002(a)(7), (8). Section 302.002 thus does not apply to this case. *See Smith v. Huston*, 251 S.W.3d 808, 828 (Tex. App.—Fort Worth 2008, pet. denied); *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786,

24

797–98 (Tex. App.—Dallas 2007, no pet. h.) (reasoning that trial court erred by awarding prejudgment interest under section 302.002). Consequently, the trial court did not err by failing to calculate prejudgment interest on FBCB's breach of contract and article 21.21 awards pursuant to section 302.002 of the finance code. We overrule GuideOne's second issue.

## V. JURY CHARGE ERROR

In its third issue, GuideOne argues that the trial court abused its discretion by denying GuideOne's requested jury charge questions and instructions. It challenges the trial court's submission of question numbers one, two, three, four, six, seven, ten, eleven, and twelve.

### A. Standard of Review

A party is entitled to a jury question, instruction, or definition that is raised by the pleadings and evidence. Tex. R. Civ. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). This is a substantive, nondiscretionary directive to trial courts, requiring them to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992).

The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 900 (Tex. App.—Fort Worth 2007,

25

pet. granted). This broad discretion is subject only to the limitation that controlling issues of fact must be submitted to the jury. *Id*.; *see also* Tex. R. Civ. P. 278. Rule 277 also affords the trial court considerable discretion in deciding what instructions are necessary and proper. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451–52 (Tex. 1997). Indeed, a trial court is afforded even more discretion when submitting instructions than when submitting questions. *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied).

The standard of review for error in the jury charge is abuse of discretion, which occurs only when the trial court acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000); *Aquamarine Operators, Inc. v. Downer*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). We will not reverse a judgment based on charge error in the absence of harm, which results if the error "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1; *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied).

## B.    Question Number Three

Question number three asked the jury whether GuideOne engaged in any unfair or deceptive act or practice that caused damage to FBCB. GuideOne complains about five of the eight alternative definitions attributed to the term "unfair or deceptive act or practice."

Alternative definition number two provides that "unfair or deceptive act or practice" means "[f]ailing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear." Without any explanation, GuideOne contends that the portion of the definition stating "when the insurer's liability has become reasonably clear" is a comment on the weight of the evidence.

The evidence shows that the parties disputed the need to upgrade to R-19 insulation. However, the evidence also shows that GuideOne became aware of the need to include R-19 insulation as early as March 2004. GuideOne had estimates from Precision and Year Around in late summer 2003. Stolowski agreed that as of the summer of 2004, the claim should "have been paid a long time ago." In light of this evidence, we hold that the trial court did not abuse its discretion by including this alternative definition.[8]

---

[8] *See also Coats v. Ruiz*, 198 S.W.3d 863, 880 (Tex. App.—Dallas 2006, no pet.) (reasoning that an insurer breaches its common law duty of

27

Alternative definition number three provides that "unfair or deceptive act or practice" means "[f]ailing to provide promptly to [FBCB] a reasonable explanation of the factual and legal basis in the policy for an insurer's denial of the claim [or the insurer's offer of a compromise settlement of the claim]." GuideOne argues that the portion of the definition regarding an insurer's denial of the claim is not supported by the evidence because the evidence showed that GuideOne never denied the claim. GuideOne is correct that it never denied the claim as a whole, but it contested the need to upgrade to R-19 insulation after FBCB notified it that the City of Bedford required the upgrade. The record demonstrates that it was not until May 17, 2004, that GuideOne notified FBCB by letter of its opinion that the R-19 insulation was required for residential dwellings, not commercial. The definition is also set forth in the conjunctive, which allowed the jury to consider that "unfair or deceptive act or practice" meant GuideOne's failure to promptly provide a reasonable explanation of the basis for its settlement offer. The trial court did not abuse its discretion by including this alternative definition.

Alternative definition number five provides that "unfair or deceptive act or practice" means "[t]rying to enforce a full and final release of a claim by

good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear).

28

[FBCB], when only a partial payment had been made, unless the release was for a doubtful or disputed claim." GuideOne states that this definition is not supported by the evidence. The record, however, demonstrates that FBCB construed GuideOne's December 26, 2003 letter, which did not include the cost for the R-19 insulation upgrade, as a settlement offer. GuideOne's offer to replace the roof at the April 2004 meeting with FBCB also did not include the cost for the R-19 insulation upgrade, but GuideOne nonetheless provided a release at the meeting for FBCB's signature if FBCB accepted GuideOne's offer. We hold that the trial court did not abuse its discretion by including this alternative definition.

Alternative definition number one provides that "unfair or deceptive act or practice" means "[m]isrepresenting to a claimant a material fact or policy provision relating to the coverage at issue." GuideOne contends that no evidence supports this definition. Alternative definition number seven provides that "unfair or deceptive act or practice" means "[f]ailing to attempt in good faith to effectuate a prompt, fair, and equitable settlement under one portion of the policy of the claim with respect to which the insurer's liability has become reasonably clear in order to influence the claimant to settle an additional claim under another portion of the coverage." GuideOne contends that this definition is contrary to the great weight of the evidence. GuideOne

29

does not explain why the inclusion of these definitions probably caused the rendition of an improper verdict. Assuming without agreeing that the trial court abused its discretion by including these alternative definitions and having reviewed the entire record, we hold that the error, if any, was harmless. We overrule this part of GuideOne's third issue.

### C. Question Number Four

Question number four asked whether GuideOne "engage[d] in any false, misleading, or deceptive act or practice which was a producing cause of damages to [FBCB]." GuideOne argues that this question is duplicative of question number three, which inquired into any "unfair or deceptive act or practice." But question number four instructs the jury that "false, misleading, or deceptive act or practice" only means "[r]epresenting that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Question number three does not include this as an alternative definition to the phrase "unfair or deceptive act or practice." Therefore, the questions inquire into different conduct and are not duplicative. We hold that the trial court did not abuse its discretion by submitting this question. We overrule this part of GuideOne's third issue.

30

**D.    Question Number Six**

Question number six asked the jury to determine what sum of money, if any, "would fairly and reasonably compensate [FBCB] for its damages, if any, that resulted from any such conduct found by you in [your] answer to Question Nos. 3, 4, or 5?" The question instructed the jury to consider "[t]he reasonable and necessary cost to replace the metal roof decking" as the element of damages, if any. GuideOne first complains that the question contains an improper condition precedent because it is conditioned on two duplicative questions—question numbers three and four. We already determined above, however, that the trial court did not abuse its discretion by submitting question number four.

GuideOne also contends that the question should have included the phrase "with one of like kind and quality" just because this is the language found in the policy. But as FBCB responds, question number six inquired about damages relating to FBCB's article 21.21 damages—a different claim than FBCB's claim for breach of the insurance policy, which allowed GuideOne to repair, rebuild, or replace the property with other property of like kind and quality. In any event, we cannot say that the exclusion of the phrase "of like kind and quality" was reversible error in part because the instruction nonetheless limited the jury in the costs that it could consider in replacing the

31

metal roof decking to only those costs that were "reasonable and necessary." We overrule this part of GuideOne's third issue.

### E.    Question Number Seven

Question number seven asked whether GuideOne engaged in any of the conduct described in questions three, four, or five knowingly. Again, GuideOne argues that the trial court erred by submitting this question because it was conditioned on duplicative question numbers three and four. We determined above that the trial court did not abuse its discretion by submitting question number four in addition to question number three. We overrule this part of GuideOne's third issue.

### F.    Question Numbers Ten, Eleven, and Twelve

GuideOne argues that the trial court erred by submitting question numbers ten, eleven and twelve and that, assuming submission of question number ten was proper, the jury's finding in response to question number ten irreconcilably conflicts with its finding in response to question number six. Question numbers ten, eleven, and twelve covered FBCB's breach of good faith and fair dealing claim. The jury found in response to question nine that GuideOne had failed to comply with its duty of good faith and fair dealing to FBCB, found in response to question ten that $30,000 would fairly and reasonably compensate FBCB for its damages proximately caused by the breach, found in response to question

32

eleven that GuideOne was actually aware that its actions involved a high degree of probability of financial ruin to FBCB, and found in response to question twelve that $55,000 should be awarded to FBCB as exemplary damages for GuideOne's conduct found in question eleven. The record shows that FBCB did not move for judgment based on the jury's answers to question numbers ten, eleven, and twelve; the judgment awards FBCB amounts for its breach of contract and article 21.21 claims, for interest under article 21.55, for attorney's fees, for prejudgment and postjudgment interest, and for costs. We hold that error, if any, in question numbers ten, eleven, and twelve was harmless because the trial court did not enter judgment based on the jury's findings to those questions. *See Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 538 (Tex. App.—Tyler 1992, writ denied) ("We are of the opinion that since no judgment was rendered by the court based on jury findings in questions one and two that any error in those questions was harmless."). Any error stemming from an alleged irreconcilable conflict between question numbers six and ten is harmless for the same reason. We overrule these parts of GuideOne's third issue.

### G. Question Number One

Question number one asked the jury whether GuideOne failed to comply with the insurance policy issued to FBCB, and it instructed the jury that GuideOne's failure to comply was excused by FBCB's previous failure "to

33

permit [GuideOne] to take samples of damaged and undamaged property for inspection, testing, and analysis" or "to provide GuideOne with all items, statements, and forms required in order to secure final proof of loss." Although GuideOne initially argued that question number one should have been conditioned on certain factors and preceded by certain questions, GuideOne has since waived its challenges to question number one, conceding that FBCB is correct that GuideOne waived its complaints regarding the breach of contract question by entering into a rule 11 agreement unconditionally paying the $286,596.63 breach of contract damages while reserving the right to appeal the prejudgment interest on those damages. GuideOne has consequently abandoned its challenge to jury question number one.

### H. Question Number Two

If the jury answered yes to question number one, then it was instructed to answer question number two, which asked what sum of money would fairly and reasonably compensate FBCB for its damages resulting from the conduct found by the jury in question number one. It instructed, "Do not speculate about what a party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment." GuideOne argues that the speculation instruction is appropriate for DTPA damages only, not for "actual damages." As stated above, however,

34

GuideOne abandoned its challenges to question number one. Because question number two inquires about damages related to the jury's affirmative finding in question number one, we hold that GuideOne's argument complaining of question number two is subsumed in GuideOne's waiver of its challenges to question number one. We overrule the remainder of GuideOne's third issue.

## VI. MOTION FOR NEW TRIAL

In its fourth issue, GuideOne argues that the trial court abused its discretion by denying its motion for new trial. GuideOne relies on the identical arguments set forth above as the bases for the trial court's abuse of discretion. With the exception of our sustaining part of GuideOne's first issue regarding whether GuideOne unconditionally tendered $155,000 to FBCB on July 7, 2005, we have resolved the remainder of GuideOne's arguments against it. Accordingly, we overrule GuideOne's fourth issue.

## VII. CONCLUSION

Having sustained part of GuideOne's first issue, we modify that part of the trial court's judgment awarding FBCB a statutory interest penalty under article 21.55 of the insurance code in the amount of $188,398.71 to award FBCB a statutory interest penalty under article 21.55 in the amount $153,735.12. *See* Tex. R. App. P. 43.2(b).

35

Having overruled the remainder of GuideOne's issues, we affirm the trial court's judgment as modified.

DIXON W. HOLMAN
JUSTICE

PANEL:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

CAYCE, C.J. concurs without opinion.

DELIVERED:  October 2, 2008