

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00376-CV

**GISELLE RUTLEDGE,**

**Appellant**

**v.**

**JAMES G. LEONARD**
**AND THE LEONARD LAW FIRM, PLLC,**

**Appellees**

---

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 71171**

---

## MEMORANDUM OPINION

---

This case began as a straightforward debt collection suit brought by James G. Leonard (Leonard) and The Leonard Law Firm PLLC (LLF) against Giselle Rutledge to collect attorney's fees earned during the representation of Rutledge in her divorce. But, during the pendency of this suit to collect attorney's fees, Leonard "gave up" his law license. Raising four points, Rutledge appeals the trial court's judgment that was entered on a jury verdict in Leonard's and LLF's favor. We will affirm.

In 2003, Rutledge signed a written retention agreement, entitled "Family Law Attorney-Client Agreement," that stated she retained LLF to represent her in a family law matter described as "Divorce – TRO." After an initial emergency matter was handled, Rutledge signed a second retention agreement, again entitled "Family Law Attorney-Client Agreement," that stated she retained LLF to represent her in a family law matter described as "Divorce Case Filed by Don Rutledge." Both agreements stated, "This contract is between you and the law firm, not with a particular attorney." In addition, the second agreement referenced the simultaneous signing of a Promissory Note and Security Agreement by Rutledge "in consideration for this firm advancing legal services and expenses in connection with your case, and in lieu of your paying a retainer and monthly invoices." Rutledge signed a Promissory Note for the fees that had already accrued ($4,377.75), plus all additional services and expenses rendered on or after that date in connection with her divorce. Rutledge also signed a Security Agreement, listing as collateral four tracts of land and the manufacturing equipment owned by Rutledge's business. Leonard recorded the Security Agreement in the Ellis County real estate records.

Rutledge subsequently received monthly invoices of the services rendered by Leonard and the staff of LLF, the time spent performing those services, and the amount charged for that time. After the divorce was finalized, the unpaid balance on the invoices totaled $20,585.00, which Rutledge refused to pay.

Leonard and LLF thus filed this suit against Rutledge, alleging breach of contract and, alternatively, quantum meruit. Furthermore, Leonard and LLF alleged that,

pursuant to the Security Agreement and applicable law, they were entitled to judicial foreclosure of the liens securing the debt. The jury found: (1) Rutledge failed to pay Plaintiffs' attorney's fees that she had agreed to pay; (2) $20,585.00 would fairly and reasonably compensate Plaintiffs' for Rutledge's failure to pay attorney's fees; and (3) a reasonable fee for the necessary services of Plaintiffs' attorney in this case is $15,000.00 for preparation and trial, $5,000.00 for an appeal to the court of appeals, and $5,000.00 for an appeal to the Texas Supreme Court. The trial court entered judgment on the verdict and also ordered that Leonard and LLF are entitled to foreclosure of their liens on the real properties located in Ellis County and the manufacturing equipment owned by Rutledge's business.

## Capacity to Sue

In her first point, Rutledge contends that the trial court erred in granting judgment for Leonard because he cannot recover individually for breach of a contract that specifies the contract is with LLF and that specifically excludes any particular attorney from being a party to the contract. In her second point, Rutledge asserts that the trial court erred in granting judgment for LLF because Leonard was a non-lawyer at the time of trial[1] and therefore cannot be LLF's "legally qualified representative." Rutledge characterizes each of these points as a challenge to the party's standing, but these matters are actually ones of capacity.

---

[1] Rutledge does not dispute that Leonard was a licensed attorney during all times he performed legal work on her divorce case.

The Texas Supreme Court has explained the difference between standing and capacity:

> A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy.

*Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). In this case, Rutledge does not argue that Leonard and LLF have no justiciable interest in payment for the legal work performed. Rather, she contends that Leonard has no *authority* to sue in his individual capacity for a claim owed to LLF and that LLF has no *authority* to sue as a legal services entity because its only named representative is a non-lawyer. Thus, we conclude Rutledge's complaints are challenges to Leonard and LLF's capacity, rather than standing.

The failure to raise the issue of capacity through a verified plea results in waiver of that issue both at trial and on appeal. TEX. R. CIV. P. 93; *see Pledger v. Schoellkopf*, 762 S.W.2d 145, 145-46 (Tex. 1988); *Spurgeon v. Coan & Elliott*, 180 S.W.3d 593, 597 (Tex. App.—Eastland 2005, no pet.); *Champion v. Wright*, 740 S.W.2d 848, 851 (Tex. App.—San Antonio 1987, writ denied). Because Rutledge did not file a verified pleading challenging Leonard or LLF's capacity to sue, she has waived these complaints. *See, e.g., Spurgeon*, 180 S.W.3d at 597-98; *Stephenson v. Lynch*, No. 05-99-01874-CV, 2001 WL 126403, at *2-3 (Tex. App.—Dallas Feb. 15, 2001, pet. denied). We therefore overrule Rutledge's first two points.

## Judicial Foreclosure

We now turn to Rutledge's fourth point, in which she argues that the trial court's judgment allowing foreclosure of the security interests should be set aside because Leonard failed to submit any jury question on the "distinct cause of action for foreclosure of security interest." Rutledge bases this argument on the presumption that foreclosure of a security interest is a separate cause of action, but it is not. Judicial foreclosure is a remedy. *See Garza v. Allied Fin. Co.*, 566 S.W.2d 57, 62 (Tex. App.—Corpus Christi 1978, no writ) ("Judicial foreclosure is an additional remedy to that of seeking a personal judgment against a debtor."). Furthermore, Rutledge identifies no factual dispute establishing the need for a jury question. *See Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971) ("Submission of an issue on an undisputed fact is unnecessary."); *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 834 (Tex. App.—Fort Worth 2008, no pet.). Because no jury question was necessary, the trial court did not err in ordering that Leonard and LLF are entitled to foreclosure of their liens. We overrule Rutledge's fourth point.

In her third point, Rutledge conclusorily asserts that the trial court's judgment allowing foreclosure of the security interests should be set aside because there was no evidence or insufficient evidence submitted on the cause of action. But as explained above, judicial foreclosure is a remedy, not a separate cause of action. *See Garza*, 566 S.W.2d at 62. Moreover, the retention agreements, the Promissory Note, and the Security Agreement, all signed by Rutledge, were admitted at trial. Under the Default and Remedies section, the Security Agreement provides:

2.	If a default exists, Secured Party may –

a.	demand, collect, convert, redeem, settle, compromise, receipt for, realize on, sue for, and adjust the Collateral either in Secured Party's or Debtor's name, as Secured Party desires, or take control of any proceeds of the Collateral and apply the proceeds against the Obligation;

b.	take possession of any Collateral not already in Secured Party's possession, without demand or legal process, and for that purpose Debtor grants Secured Party the right to enter any premises where the Collateral may be located;

c.	without taking possession, sell, lease, or otherwise dispose of the Collateral at any public or private sale in accordance with the law;

d.	exercise any rights and remedies granted by law or this agreement;

e.	notify obligors on the Collateral to pay Secured Party directly and enforce Debtor's rights against such obligors; and

f.	as Debtor's agent, make any endorsements in Debtor's name and on Debtor's behalf.

3.	Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms of this agreement.  Secured Party may exercise all remedies at the same or different times, and no remedy is a defense to any other.  Secured Party's rights and remedies include all those granted by law and those specified in this agreement.

In light of the foregoing, we conclude that there is sufficient evidence to support the trial court's judgment allowing foreclosure of the security interests, and we thus overrule Rutledge's third point.

**Conclusion**

Having overruled all Rutledge's points, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed May 20, 2009
[CV06]