**Affirmed as Modified and Majority and Dissenting Opinions filed April 30, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00089-CV

---

## HAND & WRIST CENTER OF HOUSTON, P.A. AND SCA HOUSTON HOSPITAL FOR SPECIALIZED SURGERY, L.P., Appellants

## V.

## REPUBLIC SERVICES, INC., Appellee

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-38689**

---

## MAJORITY OPINION

Appellants, Hand & Wrist Center of Houston ("Hand & Wrist") and SCA Houston Hospital for Specialized Surgery ("SCA Hospital"), appeal the amount awarded as prejudgment interest on their claims against appellee, Republic

Services, Inc. ("Republic"). We hold that the trial court abused its discretion by failing to award prejudgment interest on the partial payments that Republic made on the eve of trial. We modify the trial court's judgment to include such interest and affirm the judgment as modified.

## BACKGROUND

An employee of Republic required medical attention and sought medical services from appellants. Republic signed a "Letter of Guarantee," promising to pay for the medical services provided to the employee. Appellants provided the medical services to employee and billed Republic. The amount owed on the bills was $4,028.62 to Hand & Wrist and $15,534.51 to SCA Hospital.

On October 14, 2009, Republic received its first bills from appellants, which it did not pay. Appellants attempted to collect the amount owed by sending further bills and making phone calls to Republic requesting payment. When appellants still did not receive payment from Republic, appellants contacted their collections attorney to resolve the matter. On May 20, 2010, appellants' attorney sent a letter to Republic demanding payment of $4,028.62 to Hand & Wrist and $15,534.51 to SCA Hospital for the medical services rendered under the Letter of Guarantee and attaching copies of the bills for those services.

Having received no payment from Republic, appellants filed their original petition on June 23, 2010, alleging that Republic breached the guarantee contract by failing to pay for the medical services provided. Appellants sought damages as well as prejudgment interest, post-judgment interest, costs, and attorney's fees. On October 4, 2011, just before trial was set to begin, Republic made partial

2

payments.[1]   Republic paid $2,915.48 to Hand & Wrist and $2,517.06 to SCA Hospital.

At trial, representatives of all parties candidly told the jury about these payments and framed the case as a dispute over whether Republic had to pay the remainder of the bills.  Appellants' theory was that Republic had paid only part of the amounts due under the contract and that the jury should award them the amounts still owed.  Republic's theory was that the amounts due under the contract had been adjusted and that it had paid the adjusted amounts, so the jury should award zero damages.  For example, Republic's counsel told the jury in his opening argument that "this contract in this case allows for something called adjustments . . . , and these adjustments were done in this case, and . . . [t]hese folks were paid after the adjustments were made."  Again in closing, counsel stated that the bills "were reduced by different amounts, and there were payments made in accordance with those reductions," so "the total account balance is zero."

Appellants called Sean Lundy, a board-certified medical practice executive at Hand & Wrist, who testified that he is responsible for the billing and collections, among other business administration duties.  Lundy testified that Republic signed a Letter of Guarantee with appellants.  The Letter of Guarantee provides, in pertinent part, that:

> [Republic] guarantees that it will pay [Hand & Wrist and SCA Hospital] . . . their usual and customary fees for medical care rendered to the Patient.  Payment will be made within 30 days after receiving notice . . . .

---

[1] Appellants called Republic's action a "partial payment" in their statement of facts without contradiction by Republic.  Thus, we accept this fact as true.  *See* Tex. R. App. P. 38.1(g).  As explained below, other facts in the record and the conduct of both parties also show that the money Republic paid appellants was a partial payment of the amounts due under the guarantee contract.

[Appellants] will not seek additional payment from [Republic] under this Letter of Guarantee if 1) payment is made by an insurance carrier in accordance with the . . . Worker[s'] Compensation statutory fee schedule, or 2) payment is made under terms of a Certified Health Care Network's contracted fee schedule, 3) payment is made by a Third Party Administrator's Provider Agreement, if any are in effect, or (4) [Republic] has workers' compensation insurance with Texas Mutual Insurance Company.

Payment will be made . . . if a claim is not filed with the Insurance carrier, by [Republic], in a timely fashion . . . .

Lundy testified that appellants "did not receive payment within 30 days at all. [Appellants] didn't receive a discounted payment. [Appellants] didn't receive any payment after notifying [Republic] with the bills . . . ."

Lundy stated that appellants also did not receive any payment: (1) by an insurance carrier in accordance with the Texas Department of Insurance, Division of Workers' Compensation; (2) under the terms of a Certified Health Care Network's contracted fee schedule; or (3) from a third-party administrator's provider agreement. Additionally, Lundy stated that Republic did not submit a claim to its insurance provider in a "timely fashion," but that Republic did so "over a year later."

Lundy testified that after sending numerous bills to Republic and receiving no payments, appellants transferred the matter to their collections attorney. Lundy also admitted that Republic had sent a payment to appellants' "lockbox account" in the amount of $2,915.48 to Hand & Wrist and $2,517.06 to SCA Hospital. The evidence admitted at trial indicates this payment was entered into Hand & Wrist's billing system on October 4, 2011. Lundy further stated that both appellants received the partial payments "at the same time." Finally, Lundy testified that the amount initially owed SCA Hospital was $15,534.51, and the amount initially

4

owed Hand & Wrist was $4,028.62. Thus, the amounts Republic owed on the original bills after deducting its partial payments were $1,113.14 to Hand & Wrist and $13,017.45 to SCA Hospital.

On cross-examination, Lundy disagreed with Republic's categorization of the unpaid balance as an "adjustment," and denied that any condition within the Letter of Guarantee or "adjustment" occurred. Republic presented no evidence in its case in chief of either "adjustments" on the amount owed by Republic or the occurrence of any of the conditions within the Letter of Guarantee.[2] Appellants' trial counsel asked Lundy about the alleged adjustments made to the amount owed by Republic:

> [Appellants' Trial Counsel:] Okay. So -- so none of these caveats to allow this adjustment occurred; therefore, the fees that -- that are y'all's normal fee schedule are owed?
>
> [Lundy:] Correct.
>
> [Counsel:] Okay. So -- so it's just flat wrong, what opposing counsel said about this contract allows for adjustments under the circumstances of this case?
>
> [Lundy:] Yes.

The jury found that Republic failed to comply with the Letter of Guarantee. The jury awarded Hand & Wrist damages of $1,113.14 and SCA Hospital damages of $13,017.45.

Appellants moved for judgment and requested that prejudgment interest be awarded. In appellants' amended motion for judgment, appellants asserted that:

---

[2] The only witness put on by Republic was its own trial counsel. Trial counsel testified as to the amount of reasonable attorney's fees in this case.

5

Before suit was filed [Republic] owed Hand & Wrist $4,028.62 and owed [SCA Hospital] $15,534.51. On October 14, 2009, [Republic] received a certified letter notifying it of the claim. This is the point from which prejudgment interest accrues. A few weeks before trial defendant paid Hand & Wrist $2,915.48 and paid [SCA Hospital] $2,517.06. The jury awarded Hand & Wrist the remaining amount owed on the original debt which is $1,113.14 and awarded [SCA Hospital] $13,017.45.

. . . [Republic] takes the position that prejudgment interest is only calculated on the amount award [sic] by the jury. Case law however provides that interest is calculated on all of the payments that were not timely up to the point that the payments were made. Accordingly, this is how the prejudgment interest should be calculated in this case. Therefore, attached is a proposed judgment including prejudgment interest at the rate of 5% (1) from October 14, 2009 until October 1, 2011 on the amount paid late, and (2) from October 14, 2009 until November 1, 2011 on the amount awarded by the jury.

(citations omitted).[3] Appellants argued that prejudgment interest began to accrue on the date Republic received its first bill from appellants—October 14, 2009.

Responding to appellants' proposed final judgment, Republic argued that the proper date on which prejudgment interest began accruing was April 14, 2010, which it calculated was 180 days after October 14, 2009. Republic also contended that prejudgment interest only accrues on the damages awarded by the jury.

On January 6, 2012, the trial court signed its final judgment, which awarded prejudgment interest only on the damages awarded by the jury. The judgment states, in pertinent part:

[I]t appears to the Court from the answers of the jury to the questions submitted that [Hand & Wrist] is entitled to recover from [Republic]

---

[3] While the amended motion states that it includes an attached proposed judgment, no such attachment is within the record. The next document in the record is Republic's proposed final judgment.

actual damages in the amount of $1,113.14, plus prejudgment interest in the amount of $96.29, and attorney's fees in the amount of $1,209.59, for a total amount of $2,419.02.

It also appears to the Court from the answers of the jury to the questions submitted that [SCA Hospital] is entitled to recover from [Republic] actual damages in the amount of $13,017.45, plus prejudgment interest in the amount of $1,126.00, and attorney's fees in the amount of $4,660.35, for a total amount of $18,803.50.[4]

This appeal followed.

## ANALYSIS

Appellants raise two issues on appeal: (1) whether public policy allows a defendant to avoid prejudgment interest by "unilaterally tendering" payment just before trial; and (2) whether the trial court abused its discretion in failing to award prejudgment interest on the payments made by Republic before trial. We will address appellants' second issue first. Because we hold that the trial court did abuse its discretion and that appellants are entitled to interest on the payments, we do not reach the first issue.

## I.      Standard of review

There are two sources in Texas law for the award of prejudgment interest: (1) general principles of equity; and (2) an enabling statute. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Because the claims in this case do not fall within any enabling statute, an award of prejudgment

---

[4] Because prejudgment interest is simple interest, the formula for calculating it is as follows: Amount x Interest Rate x Time. Time is calculated by counting the number of days that have elapsed and dividing that by the number of days in a year (365). Here, the time between April 14, 2010 and January 5, 2012, is one year and 266 days, or 1.73 years. The interest rate is 5%. Inserting the numbers from the judgment, the interest calculation is as follows for Hand & Wrist: $1,113.14 x .05 x 1.73 = $96.29; and for SCA Hospital: $13,017.45 x .05 x 1.73 = $1,126.01.

7

interest is governed by equitable principles. *Lee v. Lee*, 47 S.W.3d 767, 799–800 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Where no statute controls, the decision to award prejudgment interest is within the trial court's discretion. *Quartaro v. Strategic Outsourcing, Inc.*, No. 14-09-00567-CV, 2010 WL 2901736, at *2 (Tex. App.—Houston [14th Dist.] July 27, 2010, no pet.) (mem. op.). We review the trial court's award of prejudgment interest for abuse of discretion. *Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex. App.—Houston [14th Dist.] 1997, no writ). A trial court abuses its discretion when it fails to analyze or apply the law correctly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

## II. The trial court abused its discretion by failing to take into account the amounts paid before trial in calculating the prejudgment interest award.

We begin by defining the issue before us. The jury found that Republic breached its guarantee contract with appellants, and Republic does not challenge that finding on appeal. Nor does Republic dispute on appeal that it owed contractual damages of $4,028.62 to Hand & Wrist and $15,534.51 to SCA Hospital—which is the sum of the amounts Republic paid before trial and the damages awarded by the jury. As discussed below, nowhere does Republic challenge the jury's awards, contend that it did not owe the pretrial payments under the contract, or seek a credit against the jury's awards in the amount of those payments.

In addition, the trial court correctly resolved the parties' dispute below regarding when prejudgment interest began to accrue. Appellants presented uncontroverted evidence that Republic received appellants' first written notice of claim on October 14, 2009, seeking payment of $4,028.62 to Hand & Wrist and

8

$15,534.51 to SCA Hospital. Thus, as a matter of law, prejudgment interest on that claim began to accrue 180 days from Republic's receipt of the written notice of claim. *See Johnson & Higgins*, 962 S.W.2d at 531. Republic argued below that the accrual date was April 14, 2010, the trial court accepted that date in calculating the interest it awarded in the judgment, and appellants do not challenge that accrual date on appeal.[5] Instead, the issue before us on appeal is what happened to that interest when partial payments were later made.

### A. Appellants are entitled to prejudgment interest on Republic's pretrial payments.

Uncontroverted evidence showed that appellants received unconditional partial payments on the contract on October 4, 2011, in the amount of $2,915.48 to Hand & Wrist and $2,517.06 to SCA Hospital. The trial court did not award prejudgment interest on these amounts. Appellants argue that the court analyzed and applied the law incorrectly because prejudgment interest accrued on the full amount due under the contract until these partial payments were made, citing *Brainard v. Trinity Universal Insurance Company*, 216 S.W.3d 809, 816 (Tex. 2006). Republic argues, however, that the trial court was correct to exclude these partial payments from the prejudgment interest calculation altogether because they were not submitted to the jury or awarded in the judgment. We agree with appellants.

Prejudgment interest has long been defined as "'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.'"

---

[5] April 14, 2010 is actually 182 days after October 14, 2009. Nevertheless, because the trial court's judgment used an accrual date of April 14, 2010, and no party has challenged that date on appeal, we accept it as the accrual date in this opinion.

*Johnson & Higgins*, 962 S.W.2d at 528 (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)); *see Brainard*, 216 S.W.3d at 816. Here, appellants certainly lost the use of the money due them, which Republic belatedly paid in part on October 4, 2011. By paying appellants' damages in part before judgment was rendered, can Republic avoid liability for prejudgment interest on the amounts paid? We hold that it cannot.

***The jury charge does not bar interest.*** Republic is wrong to argue that in order to recover prejudgment interest, appellants had to submit to the jury their claims for the partial payments they had previously received. When amounts paid are undisputed or conclusively established, there is no need to submit a claim for those amounts to the jury. *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 633 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex. 1971)). In light of this principle, it is unsurprising that Texas courts have calculated prejudgment interest using undisputed amounts owed or paid by a party even though those amounts were not found by the jury. *Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 150–51, 156 (Tex. App.—Amarillo 2001, pet. denied) (concluding amount owed under contract was established as a matter of law and awarding prejudgment interest on that amount, despite defendant's partial tender of the amount owed months after the debt became due); *see also Brainard*, 216 S.W.3d at 817 (holding damages found by jury should be reduced by undisputed amount of partial payment in calculating interest).

Our dissenting colleague contends that because "[t]he jury did not find" appellants were entitled to Republic's partial payments as contract damages, appellants cannot recover prejudgment interest on those payments. This contention is contrary not only to the cases just cited, but also to the manner in which these parties chose to try their lawsuit.

10

As discussed above, Republic took the position that the pretrial payments were made in accordance with adjustments allowed under the parties' contract. Appellants, for their part, deducted the payments from the amounts they claimed under the contract. There is no evidence that the payments were made for any purpose other than satisfying Republic's contractual obligations; the only dispute was whether that satisfaction was total or partial. No party to this case has ever disputed that Appellants were entitled under the contract to the amounts Republic paid them pretrial. Indeed, such a dispute would be difficult to sustain given the common-law rule that an unconditional tender conclusively admits every fact a plaintiff would be required to prove to recover the sum tendered and estops the defendant from disputing its liability to that extent. *E.g., Bell v. Turkey Indep. Sch. Dist.*, 214 S.W.2d 834, 835 (Tex. Civ. App.—Amarillo 1948, writ ref'd n.r.e.). In sum, because there was no factual dispute that appellants were entitled under the contract to the amounts Republic belatedly paid them before trial, there was no need for appellants to get a jury finding in order to obtain prejudgment interest on those amounts.

The dissent also contends that the jury's damage findings somehow "take [these partial contract payments] into account" because appellants asked the jury to find the total amount of damages due under the contract, rather than the amount remaining after the partial payments. That is not an argument Republic has made. Even if we were to consider this new argument, however, we disagree that the dissent's interpretation is a reasonable way to read the jury's findings.

Rather than asking the jury to find the total amount due as damages under the contract, the charge asked "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate [each appellant] for its damages, if any, that were proximately caused by [Republic's] breach?" At the time the jury was

asked this question, it knew the undisputed amounts of the original bills, the undisputed amounts of the payments already made by Republic, and the remaining amounts appellants contended were still due: $1,113.14 to Hand & Wrist and $13,017.45 to SCA Hospital. In light of this evidence and the language of the charge, the jury could reasonably find (as it did) that $1,113.14 and $13,017.45 were simply the sums that, if paid *now*, would fairly and reasonably compensate appellants for their damages caused by Republic's failure to pay the bills as required by the contract. This finding does not negate the undisputed fact that Republic had previously paid other portions of those bills on which interest might be owed.

Moreover, it is not reasonable to read the jury's figures as awards of the total damages due to each appellant under the contract—as the dissent does—because no party offered any evidence that those were the total amounts due.[6] While the dissent is certainly correct that we are not allowed to speculate, we also cannot indulge an interpretation of the jury's findings that—far from being "within the range of evidence"—is supported by no evidence. Accordingly, we conclude that the charge does not bar appellants from seeking interest on the pretrial payments.

Of course, the parties could have tried their lawsuit differently or entered into an express agreement regarding interest on the pretrial payments. For the reasons given above, however, we cannot say that appellants waived their right to

---

[6] As explained above, appellants' evidence was that Republic owed the billed total of $4,028.62 to Hand & Wrist and $15,534.51 to SCA Hospital. Republic's position was that it owed an adjusted total of $2,915.48 to Hand & Wrist and $2,517.06 to SCA Hospital, which it paid. The jury awarded $1,113.14 to Hand & Wrist and $13,017.45 to SCA Hospital. If Republic really thought the jury's finding meant that it owed only a total of $1,113.14 to Hand & Wrist under the contract, it surely would have asked for some of its $2,915.48 payment back, but it has not. Nor has it asked for a credit of $2,517.06 against the jury's award of $13,017.45 to SCA Hospital.

recover prejudgment interest on the undisputed amounts belatedly paid under the contract by failing to submit those amounts to the jury.

**_The judgment does not bar interest._**   Republic also contends that both equitable principles and the Texas Finance Code permit prejudgment interest only on amounts actually awarded in a judgment.  According to Republic, because this judgment did not award appellants the amounts Republic had already paid them, appellants cannot recover prejudgment interest on those amounts.  The dissent agrees that a "sum must be in the judgment" in order to earn prejudgment interest.

Texas courts have rejected this rigid view.  For example, section 304.104 of the Texas Finance Code defines when "prejudgment interest accrues on the amount of a judgment."  As Republic conceded at oral argument, however, the Finance Code does not address the accrual of interest on pretrial payments.  Considering this statutory silence in _Brainard_, the supreme court held that plaintiffs could recover prejudgment interest on an amount _not_ awarded in the judgment.  The court reasoned that the plaintiffs were "entitled to recover prejudgment interest on the _damages caused by [the defendant's] negligence._"  _Brainard_, 216 S.W.3d at 817 (emphasis added).[7]

In _Brainard_, the plaintiffs settled prior to trial with one defendant and received a partial payment from the other defendant.  _Id._ at 811.  The jury found $1,010,000 in damages, but the non-settling defendant had paid the plaintiffs $5,000 and the settling defendant had paid them $1,000,000, so the trial court awarded plaintiffs a judgment of only $5,000.  _See id._ at 815–17.  Instead of

---

[7] Even though _Brainard_ involved an award of statutory prejudgment interest, it is instructive in this equitable interest case because the supreme court has conformed the equitable prejudgment interest rule to the legislative policy established in the statute.  _See Johnson & Higgins_, 962 S.W.2d at 528.

13

limiting the prejudgment interest award to the amount of the judgment, however, the supreme court held that the non-settling defendant must pay prejudgment interest on the total amount of damages caused by the conduct at issue— $1,010,000. *Id.* at 817. In other words, the court recognized that the plaintiffs had received damages (in the form of pre-trial payments) that were not awarded in the judgment, and it held that they were entitled to interest on those damages. In doing so, the court considered the total amount of damages caused, the date prejudgment interest began to accrue, and the date and amount of payments made. *Id.* at 816–17. By constructing the prejudgment interest award in this manner, the court determined that the claimant would be fully compensated for the lost use of money. *Id*. at 816.

To calculate the correct amount of prejudgment interest to award, *Brainard* used the framework established in *Battaglia v. Alexander*, 177 S.W.3d 893, 907 (Tex. 2005). *Battaglia* applied a different prejudgment interest statute than *Brainard*, but the supreme court found no reason to distinguish between the two cases—presumably because neither statute addressed the calculation of interest on pretrial payments.[8] *See Brainard*, 216 S.W.3d at 816. *Battaglia* held that pretrial settlement payments must be taken into account in order for interest to actually compensate for the lost time value of money. 177 S.W.3d at 907. As *Brainard* explained, "to satisfy the purpose of prejudgment interest, settlements must be credited periodically, according to the date they are received. This approach,

---

[8] The statute applied in *Battaglia* stated that: "In a health care liability claim . . . the judgment must include prejudgment interest on *past damages* found by the trier of fact . . . ." *Battaglia*, 177 S.W.3d at 905–06 (emphasis added). *Battaglia* noted that this prejudgment interest statute "was not carried forward in . . . codification. The accrual of prejudgment interest in health care liability suits is now addressed in sections 304.104 and 304.1045 of the Texas Finance Code, which are general prejudgment interest provisions . . . ." *Id.* at 905.

known as the 'declining principal' formula, is the proper way to apply credits in the calculation of prejudgment interest." 216 S.W.3d at 816 (citation omitted).

The interest framework used in *Brainard* and *Battaglia* applies not only to partial settlements, but also (as in this case) to partial payments of obligations that are unconditionally tendered and accepted. *See, e.g., GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 833 (Tex. App.—Fort Worth 2008, no pet.) (applying the declining principal formula to determine the proper assessment of interest on an unconditional tender made before trial); *Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360, 367 (Tex. Civ. App.—Amarillo 1977) ("It is the universal rule, and the rule followed in Texas, that where the parties have not otherwise agreed, a partial payment on a single obligation consisting of principal and interest is first applied to extinguish the accrued interest and the balance is then applied toward discharging the principal."), *aff'd*, 569 S.W.2d 480 (Tex. 1978). Applying this framework to partial payments is consistent with the general rule that paying part of a debt does not bar the further accrual of interest. *Hoxie Implement Co.*, 65 S.W.3d at 156.

Republic concedes that if it had made no payment at all, then the trial court could have awarded prejudgment interest on the full amount of damages due under the contract. Republic also concedes that if the judgment had included the full amounts of damages and then provided credits for the amounts of Republic's unilateral partial payments, appellants could have obtained prejudgment interest on the full amount. In addition, it is clear from *Brainard* that if appellants had instead received a partial settlement payment, the trial court could have awarded prejudgment interest on the full amount of damages due under the contract using

15

the declining principal formula.[9] Yet, Republic contends that because it made a unilateral partial payment and that payment was not recited in the judgment, appellants are not entitled to seek prejudgment interest on the full amount due on the contract. According to Republic, its payment extinguished appellants' claim for prejudgment interest on part of the principal amount due under the contract.

We reject Republic's contention. There is no reason to distinguish between partial settlements and unilateral partial payments in applying the declining principal formula, especially given the supreme court's emphasis on ensuring uniformity in this area. *See Brainard*, 216 S.W.3d at 817 (taking into account both unilateral payment and settlement payment when applying the formula); *Johnson & Higgins*, 962 S.W.2d 532–33 (discussing uniformity).[10] Applying the formula uniformly will avoid difficult line-drawing problems in distinguishing between partial settlements and partial payments. Nor is there any reason to require that payments made prior to trial (whether partial settlements or unconditional payments) also be recited as damages in the judgment before those payments will accrue prejudgment interest. As explained above, the amount of such payments will usually be undisputed, and neither equitable principles nor the Finance Code require the pointless formalism of awarding the payments again in the judgment and providing an offsetting credit simply to trigger an interest award.

---

[9] This result would be different, for example, if the terms of a partial settlement included an agreement that the amount paid represented principal and extinguished liability for interest on the part of the principal paid. But such circumstances can be taken into account while still applying the overall framework of the declining principal formula used in *Battaglia* and *Brainard*.

[10] We recognize that certain statutes may adjust the calculation of interest when settlement offers are involved, but those statutes are not at issue here. *E.g.,* Tex. Fin. Code Ann. §§ 305.105–305.107.

Our dissenting colleague takes issue with Republic's concession that appellants could have recovered interest if the judgment had recited the partial payments and provided offsetting credits, contending this procedure would be a forbidden additur to the jury's awards of damages. We disagree. In that scenario, there would be no change in the amounts of damages actually awarded in the judgment; the only change would be adjusting the calculation of prejudgment interest to include the undisputed payments. The dissent points to no cases applying additur principles to the court's calculation of prejudgment interest, and we have found none.[11] To the contrary, as discussed above, *Brainard* used amounts not awarded in the judgment to calculate prejudgment interest.

***Policy considerations support awarding interest.*** Finally, awarding appellants interest on Republic's partial payments is consistent with the policy goals of equitable prejudgment interest that have been recognized by the Texas Supreme Court. By allowing recovery of prejudgment interest on the full amount of damages resulting from Republic's breach of contract, whether included in the judgment or admitted by Republic in the form of pretrial payments, we are adhering to the long-held notion that prejudgment interest is compensation for the lost use of money due as damages. *See Brainard*, 216 S.W.3d at 816; *Battaglia*, 177 S.W.3d at 907; *Johnson & Higgins*, 962 S.W.2d at 528. For nearly a year and a half, appellants lost the use of the amounts that Republic belatedly paid them. Awarding interest on those amounts makes appellants whole; it results in neither a

---

[11] We do note, however, that the prohibition of additur is not as broad as the dissent suggests. *Compare Dimick v. Schiedt*, 293 U.S. 474 (1935) (holding trial court violated Seventh Amendment to U.S. Constitution by ordering new trial unless defendant consented to increase in amount of personal injury damages awarded by jury), *with Taylor v. Green*, 868 F.2d 162, 165 (5th Cir. 1989) (holding court may award undisputed amount of damages without violating prohibition of additur), *and Ponce v. Sandoval*, 68 S.W.3d 799, 805–06 (Tex. App.—Amarillo 2001, no pet.) (explaining that if evidence of damages is conclusive, jury finding of damages may be disregarded).

17

windfall to appellants nor a penalty to Republic.  *See Brainard*, 216 S.W.3d at 816; *see also Lorenzen v. Emps. Ret. Plan of Sperry & Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir. 1990) (discussing unjust enrichment and full compensation rationales for prejudgment interest).

Conversely, if we did not allow an award of prejudgment interest on the total amount of damages established as a result of the breach, we would be encouraging gamesmanship, expense, and delay: defendants would have free use of the money claimed as damages and could wait until the last possible moment before trial to settle or tender the amount they believe is owed.  In addition, depriving plaintiffs of interest on belated partial payments would discourage them from accepting such payments.  These results are incompatible with the supreme court's directive that the prejudgment interest scheme should implement the legislative goal of encouraging prompt settlements.  *See Johnson & Higgins*, 962 S.W.2d at 531; *see also Lorenzen*, 896 F.2d at 236 (explaining that without prejudgment interest, "there are added incentives to resist and delay the bringing of the wrongdoer to book").

\*     \*     \*

For these reasons, we hold that undisputed evidence in the record established appellants' entitlement to prejudgment interest on Republic's pretrial payments as a matter of law, and that the trial court abused its discretion by failing to award appellants such interest.  We must next determine, if possible, how prejudgment interest should have been calculated here.[12]

---

[12] *See* Tex. R. App. P. 43.2(b); *GuideOne Lloyds Ins. Co.*, 268 S.W.3d at 840 (modifying trial court's award of interest to reflect the correct amount determined on appeal and affirming award as modified); *cf. Hoxie Implement Co.*, 65 S.W.3d at 151–52 (reversing judgment of trial

**B.    Interest on the pretrial payments is calculated using the declining principal formula.**

Appellants argue in this Court, as they did below, that the declining principal formula in *Brainard* should be used to calculate prejudgment interest.[13]  Republic does not dispute that if interest is owed on the partial payments, the declining principal formula is the correct way to calculate it.

Under the declining principal formula, the entire amount owed under the contract accrues interest until Republic makes its partial payments on October 4, 2011.[14]  *See Brainard*, 216 S.W.3d at 817.  The remaining principal[15] then accrues interest until the day before the judgment is rendered.[16]  *See id.*; Tex. Fin. Code

---

court and noting the inability to render judgment on the amount of interest that should have been awarded because factual determinations needed to be made by trial court).

[13] Appellants incorrectly assert in their opening brief that the amount of the prejudgment interest award should be $510.99 for Hand & Wrist and $2,085.52 for SCA Hospital.  Appellants conceded at oral argument that "there was some math that was done wrong," but maintained that *Brainard* applied.

[14] The amount of accrued prejudgment interest on October 4, 2011, is calculated as follows:

- Hand & Wrist: 5% of $4,028.62 from 4/14/2010 (180 days after written notice of the claim) to 10/03/2011 (1.47 years) = $296.10.

- SCA Hospital: 5% of $15,534.51 from 4/14/2010 to 10/03/2011 = $1,141.79.

[15] This amount is calculated as follows:

- Hand & Wrist: The total amount due on October 4, 2011 is $4,324.72 ($4,028.62 principal + $296.10 accrued interest).  After applying Republic's partial payment of $2,915.48, the amount remaining is $1,409.24.

- SCA Hospital: The total amount due on October 4, 2011 is $16,676.30 ($15,534.51 principal + $1,141.79 accrued interest).  After applying Republic's partial payment of $2,517.06, the amount remaining is $14,159.24.

[16] The amount of prejudgment interest that accrued from the date of the payment until the day before the judgment is calculated as follows:

- Hand & Wrist: 5% of $1,409.24 from 10/04/2011 to 01/05/2012 (0.25 years) = $17.62.

19

Ann. § 304.104 (West 2006). Thus, under the declining principal formula, the total amount of prejudgment interest that should have been awarded was $313.72 to Hand & Wrist and $1,318.78 to SCA Hospital.[17]

## CONCLUSION

Having sustained appellants' second issue, we modify that part of the trial court's judgment that awarded appellants prejudgment interest in the amount of $96.29 to Hand & Wrist and $1,126.00 to SCA Hospital so that it now awards prejudgment interest in the amount of $313.72 to Hand & Wrist and $1,318.78 to SCA Hospital. We affirm the judgment as modified.

/s/    J. Brett Busby
Justice

Panel consists of Justices Frost, McCally, and Busby. (McCally, J., dissenting).

---

- SCA Hospital: 5% of $14,159.24 from 10/04/2011 to 01/05/2012 = $176.99.

[17] The total amount of prejudgment interest is calculated as follows:

- Hand & Wrist: $296.10 + $17.62 = $313.72.
- SCA Hospital: $1,141.79 + $176.99 = $1,318.78.

20