**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed September 27, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00004-CV

## LAUREL MILLER AND ELIANA MILLER, Appellants/Cross-Appellees

## V.

## DEBO HOMES, LLC, Appellee/Cross-Appellant

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 13-DCV-209822**

## M E M O R A N D U M   O P I N I O N

Laurel and Eliana Miller appeal the trial court's denial of their motion for judgment notwithstanding the verdict and motion for new trial following a jury trial. They contend the jury's award of zero attorney's fees was improper and not supported by evidence. Debo Homes, LLC cross-appeals to challenge the trial court's judgment on grounds that (1) there is no evidence to support the jury's finding of a violation of the Deceptive Trade Practices Act (DTPA); and (2) the trial court erroneously awarded the Millers pre-judgment and post-judgment interest. We affirm the trial court's judgment in part with

respect to the Millers' DTPA claim and reverse and remand in part with respect to the trial court's award of zero attorney's fees and the trial court's award of pre-judgment and post-judgment interest.

## BACKGROUND

Debo Homes contracted with Laurel and her daughter Eliana in April 2013 to build a house for them in Needville, Texas. The parties agreed the Millers would pay $178,000 in three cash installments: one-third was to be paid up front, one-third was to be paid when the house was ready for drywall installation, and one-third was to be paid when the house was completed.

The Millers had several meetings with Debo Homes salesman Kris Dominguez regarding the house's specifications before signing the construction contract. Construction began in April 2013, after the Millers made their first $60,300[1] cash payment. Laurel soon became concerned about the construction quality after she noticed broken or cracked boards and beams in the framing; pipes and vents that were not connected; uneven beams; "cracked things;" "wood just floating;" and other "things that didn't look right." Laurel hired a home inspector because she was "uncomfortable with what [she] saw."

The inspector visited the construction site on May 9, 2013, and wrote a report describing the things that needed to be fixed in the home. Laurel met with Dominguez and gave him the inspector's report. According to Laurel, Dominguez told her: "We're going to fix some things. We're not going to fix everything." Soon thereafter, Dominguez told Laurel that Debo Homes wanted to start installing the drywall and asked for the next installment payment of $59,300; Laurel told Dominguez that she was not going to make another payment until the problems with the home were fixed.

Laurel scheduled a second inspection on May 13, 2013, during which the inspector

---

[1] The $60,300 payment was for the first installment of $59,300 and for $1,000 in earnest money.

discovered additional problems with the home. Dominguez informed Laurel that Debo Homes would start installing drywall in the home on May 14, 2013. The Millers wanted construction to stop until repairs were completed. The Millers sent an email to Dominguez outlining the repairs they wanted and informing Debo Homes that they would make no payment until all repairs were made. The Millers also hired attorney Brian Crockett, who sent an email to Debo Homes on May 22, 2013. The email said the Millers retained him to investigate whether their home was being constructed in accordance with the contract and asked Debo Homes to stop further construction on the home to "ensure that any defects have been corrected prior to continued building." After receiving Crockett's email, Debo Homes stopped construction of the home for approximately three weeks.

Debo Homes sent the Millers a letter on May 29, 2013, stating that (1) Debo Homes "fixed the minor issues [the Millers' inspector] requested;" and (2) "[i]f you are not happy with our service, you are free to terminate the contract with Debo Homes and we will refund you 100% of the money you have given us after we sell the house." According to Laurel, the Millers "gave [Debo Homes] 90 days to sell the house" and "tried to work it out that it would happen within 90 days," but the Millers "never heard anything back from [Debo Homes] until [they] got a letter from [Debo Homes's] attorney."

Debo Homes resumed construction in June 2013, and the house was completed in July 2013. According to Debo Homes, all problems identified by the inspector were repaired.

Debo Homes, through its attorney, sent a letter to the Millers on August 30, 2013, stating that (1) the Millers breached their contract with Debo Homes; and (2) if Debo Homes "is able to sell the home for at least $178,000.00, the sum your client agreed to pay plus all attorney[']s fees, broker[']s fees, interest paid, cost of necessary alterations to make the home marketable, and other expenses associated with mitigation of the damages, she may receive a reimbursement of the amount she paid to him . . . [a]ny diminution of

the amount that the home sells for will be directly reflected in the reimbursement."

The Millers sued Debo Homes on October 7, 2013, alleging fraud and fraudulent inducement to contract, fraud in a real estate transaction, DTPA violations, and breach of contract. Debo Homes filed its original answer and counterclaim on November 13, 2013, alleging an affirmative defense of fraud, an affirmative defense of failure of consideration, and breach of contract as a counterclaim.

Debo Homes sold the house for $168,000 on October 19, 2013, and closed on the sale on December 31, 2013.

Debo Homes deposited $60,300 into the court's registry on August 14, 2014. A jury trial began five days later and concluded on August 22, 2014. The jury (1) answered "No" to questions asking whether Debo Homes or the Millers breached the contract; (2) found that Debo Homes engaged in a "false, misleading, or deceptive act or practice;" (3) awarded the Millers $60,650 in compensatory damages; and (4) awarded zero dollars for attorney's fees. The compensatory damages consisted of $1,000 paid by the Millers as earnest money, $59,300 paid as an installment payment, and $350 paid for fixtures.

The Millers filed a motion for judgment notwithstanding the verdict on September 10, 2014. Debo Homes filed a motion to disregard the jury's answer to Question No. 1 on September 23, 2014. The trial court denied both motions on September 29, 2014. The Millers filed a motion for new trial on September 30, 2014, which the trial court denied on October 20, 2014.

On December 22, 2014, the trial court signed a final judgment in accordance with the jury's verdict and also awarded the Millers pre-judgment and post-judgment interest. The Millers filed a timely notice of appeal on December 31, 2014, and Debo Homes timely filed its notice of cross-appeal on January 21, 2015.

4

## I.  Debo Homes's Appeal

We first address the issues Debo Homes raises in its cross-appeal before turning to the issues the Millers raise in their appeal.

### A.  DTPA Claim

Debo Homes argues in its first issue that (1) there is no evidence its alleged representations were false; and (2) the assertedly false representations were non-actionable puffery.

The jury was asked to answer the following question regarding the Millers' DTPA claim:

> **QUESTION 1:**
>
> Did Debo [Homes] engage in any false, misleading, or deceptive act or practice that the Millers relied on to their detriment and that was a producing cause of damages to the Millers?
>
> "Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred.  There may be more than one producing cause.
>
> "False, misleading, or deceptive act or practice" means any of the following:
>
> 1.  Representing the Home, construction, supervision or Agreement had sponsorship, approval, characteristics, uses, or benefits or qualities that it did not have; or
>
> 2.  Representing the Home, construction, supervision or Agreement were a particular quality, if it was of another; or
>
> 3.  Representing that the Agreement confers or involves rights that it did not have or involve; or
>
> 4.  Failing to disclose information about the Home, construction, supervision, performance or agreement that was known at the time of the transaction with the intention to induce the Millers into a transaction they otherwise would not have entered into if the information had been disclosed.

Answer "Yes" or "No."

Answer:     <u>Yes</u>

As submitted, Question 1 provided multiple bases for the jury's single "Yes" answer. On appeal, Debo Homes attacks only the first three bases in Question 1 under which the jury could have found a DTPA violation. Debo Homes does not attack the fourth basis.

An appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. *Blackstone Med., Inc. v. Phoenix Surgicals*, *L.L.C.*, 470 S.W.3d 636, 648 (Tex. App.—Dallas 2015, no pet.); *see State Farm Lloyds v. Fuentes*, No. 14-14-00824-CV, 2016 WL 1389831, at *3 (Tex. App.—Houston [14th Dist.] Apr. 7, 2016, pet. filed) (mem. op.); *Cont'l Carbon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 14–11–00162–CV, 2012 WL 1345748, at *4 (Tex. App.—Houston [14th Dist.] Apr. 17, 2012, no pet.) (mem. op.). The rule requiring an appellant to attack all independent grounds supporting a judgment has been applied in many contexts, including independent jury findings fully supporting a trial court's judgment. *Fuentes*, 2016 WL 1389831, at *3; *see Blackstone Med., Inc.*, 470 S.W.3d at 649-50; *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, an appellate court must accept the validity of that unchallenged independent ground, and any errors in the grounds challenged on appeal are harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment. *Blackstone Med., Inc.*, 470 S.W.3d at 648; *Britton*, 95 S.W.3d at 681. "The Supreme Court of Texas has repeatedly instructed that 'the courts of appeals may not reverse the judgment of a trial court for a reason not raised . . . [on appeal].'" *Cont'l Carbon Co.*, 2012 WL 1345748, at *4 (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993)); *see also Britton*, 95 S.W.3d at 681. "We are

thus prohibited from altering even an erroneous judgment in a civil case without a challenge to the error on appeal." *Cont'l Carbon Co.*, 2012 WL 1345748, at *4.

Because any of the four independent bases in Question 1 support the jury's finding of a DTPA violation, we must accept its validity and affirm the judgment on that fourth independent basis.

Accordingly, we overrule Debo Homes's first issue.

## B.    Pre-Judgment Interest

Debo Homes argues in its second issue that pre-judgment interest should not be assessed on funds that were deposited into the registry of the court. According to Debo Homes, "[I]t is uncontroverted that Debo [Homes] deposited the entire amount of the jury's $60,650.00 verdict into the registry of the court."

There are two sources in Texas law for the award of pre-judgment interest: (1) general principles of equity; and (2) an enabling statute. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998); *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Statutory provisions for pre-judgment interest apply only to cases involving claims of wrongful death, personal injury, property damages, and condemnation. *Lee v. Lee*, 47 S.W.3d 767, 799-800 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Because the claims in this case do not fall within any enabling statute, an award of pre-judgment interest is governed by common law. *Id.* at 800; *see Republic Servs., Inc.*, 401 S.W.3d at 717.

Where no statute controls, the decision to award pre-judgment interest is within the trial court's discretion. *Republic Servs., Inc.*, 401 S.W.3d at 717. We review the trial court's award of prejudgment interest for abuse of discretion. *Id.* A trial court abuses its discretion when it fails to analyze or apply the law correctly. *Id.*

7

"Prejudgment interest is awarded to fully compensate the injured party, not to punish the defendant." *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006); *see also Ventling v. Johnson*, 466 S.W.3d 143, 149 (Tex. 2015). "It is 'compensation allowed by law as additional damages for the lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.'" *Brainard*, 216 S.W.3d at 812 (quoting *Kenneco Energy, Inc.*, 962 S.W.2d at 528).

"[U]nder the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." *Kenneco Energy, Inc.*, 962 S.W.2d at 531; *Lee*, 47 S.W.3d at 800. Pre-judgment interest should not be assessed on funds during the time that they were deposited into the registry of the trial court. *Browning Oil Co. v. Luecke*, 38 S.W.3d 625, 648 (Tex. App.—Austin 2000, pet. denied); *Pegasus Energy Grp., Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 125 (Tex. App.—Corpus Christi 1999, pet. denied). Funds that are deposited into the registry are "'held in trust for the litigant who establishes his right thereto,' and interest accrues to its ultimate owner." *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 808 (Tex. 2007) (quoting *Sellers v. Harris Cty.*, 483 S.W.2d 242, 243 (Tex. 1972)). Allowing a party to recover interest on proceeds in the registry and pre-judgment interest at the same time would constitute an impermissible double recovery. *See id*.

The Millers sued Debo Homes on October 7, 2013. Debo Homes deposited $60,300 into the court's registry just five days before trial commenced in August 2014. The jury awarded the Millers $60,650 in damages. Ten days before the trial court signed its final judgment on December 22, 2014, Debo Homes deposited another $350 into the court registry. The trial court awarded the Millers $3,663.92 in pre-judgment interest from October 7, 2013 to December 22, 2014, on the full amount of damages the jury awarded.

Pre-judgment interest to compensate the Millers for the lost use of the full amount of

8

$60,650 awarded by the jury began to accrue on October 7, 2013 — the day the Millers filed suit — and continued to accrue until Debo Homes made a partial payment into the court's registry on August 14, 2014.[2] *See Republic Servs., Inc.*, 401 S.W.3d at 718. Debo Homes cannot avoid liability for pre-judgment interest altogether by paying part of the Millers' damages award before the trial court signed its judgment. *See id.*

Nonetheless, the trial court incorrectly applied the law in computing pre-judgment interest because it did not take into account Debo Homes's deposit of part of the damages award into the court's registry. Pre-judgment interest accrued on the full damages award of $60,650 only until Debo Homes deposited $60,300 on August 14, 2014. *See id.* Allowing the Millers to recover pre-judgment interest on the full $60,650 as well as interest on the $60,300 deposited by Debo Homes into the registry before trial and $300 deposited after trial would constitute an impermissible double recovery. *See Martinez*, 216 S.W.3d at 808; *cf. Republic Servs., Inc.*, 401 S.W.3d at 722-23.

Therefore, we hold that the trial court abused its discretion by awarding the Millers $3,663.92 in pre-judgment interest on the full $60,650 from October 7, 2013 until December 22, 2014, without taking into account the interest accrued to the Millers on amounts Debo Homes deposited into the registry before and after trial. Accordingly, we reverse the trial court's judgment awarding the Millers $3,663.92 in pre-judgment interest and remand this case to the trial court for a redetermination of pre-judgment interest taking into account Debo Homes' deposits into the registry.

## C.    Post-Judgment Interest

Debo Homes contends in its third issue that "a tender into the registry of the trial court of all sums due under the judgment is a means of halting post-judgment interest" and

---

[2] Debo Homes does not dispute that the pre-judgment interest accrual date is October 7, 2013. We have not found any evidence in the record that the Millers gave Debo Homes written notice of their claim before they filed suit on October 7, 2013.

Debo Homes "deposited all $60,650.00 of the judgment into the trial court registry before the trial court rendered judgment."

We review the trial court's decision regarding the assessment of post-judgment interest for an abuse of discretion. *DeGroot v. DeGroot*, 369 S.W.3d 918, 926 (Tex. App.—Dallas 2012, no pet.). "Post-judgment interest is not a punishment inflicted on a judgment debtor . . . ." *Miga v. Jensen*, 96 S.W.3d 207, 212 (Tex. 2002). "Instead, like pre-judgment interest, post-judgment interest is simply compensation for a judgment creditor's lost opportunity to invest the money awarded as damages at trial." *Id*.; *see Ventling*, 466 S.W.3d at 149. "Postjudgment interest, which begins accruing on the date the judgment is rendered, not only compounds annually but also accrues on prejudgment interest." *Ventling*, 466 S.W.3d at 149. "[A] tender into the registry of the trial court of all sums due under the judgment is a means of halting post-judgment interest." *Breault v. Psarovarkas*, No. 01-01-00122-CV, 2003 WL 876651, at *7 (Tex. App.—Houston [1st Dist.] Feb. 28, 2003, pet. denied) (mem. op.).

Debo Homes deposited $60,650 into the court's registry by December 12, 2014 — ten days before the trial court signed its final judgment. This is the exact amount the jury awarded the Millers in damages on their DTPA claim. But, contrary to Debo Homes's contention, this deposited amount does not include "all sums due under the judgment." "All sums due under the judgment" include not only compensatory damages a jury awards but also pre-judgment interest. *Cf. Ventling*, 466 S.W.3d at 149. Therefore, a tender of $60,650 into the court's registry cannot halt all post-judgment interest.

Because Debo Homes did not deposit any amount for pre-judgment interest, Debo Homes did not halt all post-judgment interest. The Millers therefore are entitled to some amount of post-judgment interest, although the exact amount of post-judgment interest will have to be determined considering the trial court's recalculation of pre-judgment interest the Millers are entitled to receive, as we discussed in issue two. Accordingly, we reverse

10

the trial court's judgment awarding the Millers post-judgment interest on the sum of $64,313.92 (consisting of the jury's damages award of $60,650 and the trial court's award of $3,663.92 in pre-judgment interest from October 7, 2013, to December 22, 2014). We remand this case for a recalculation of the post-judgment interest to which the Millers are entitled. This recalculation should take into account (1) the correct amount of pre-judgment interest the Millers are due, as we have discussed in issue two; and (2) Debo Homes's deposit of $60,650 into the court's registry.

## II. The Millers' Appeal

We now turn to the three issues the Millers raise in their appeal.

### A. Attorney's Fees

The Millers argue in their first and second issues that the trial court erred by refusing to disregard the jury's finding of zero attorney's fees and denying their motion for judgment notwithstanding the verdict. They contend the evidence regarding their attorney's fees was clear, positive, direct, and uncontradicted by other witnesses; accordingly, they contend that they proved pretrial, trial, and appellate attorney's fees as a matter of law. The Millers ask this court to "reverse and modify the trial court's judgment to include the attorney's fees that were established as a matter of law" consisting of $63,000 for trial and $40,000 for appeal.

The Millers argue in their third issue that the trial court erroneously denied their motion for new trial "because there is evidence that the Millers incurred at least some pretrial, trial, or appellate attorney's fees." Thus, they contend "the zero attorney's fee finding is either not supported by the evidence, or is against the great weight and preponderance of the evidence." The Millers ask this court to reverse and remand for a new trial to determine their reasonable and necessary attorney's fees.

A trial court may disregard a jury's finding pursuant to Texas Rule of Civil

Procedure 301 if no evidence supports the challenged findings or if a directed verdict would have been proper. *See Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Rosenblatt v. Freedom Life Ins. Co. of Am.*, 240 S.W.3d 315, 318 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We apply the standards for a legal sufficiency review. *See Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam); *Rosenblatt*, 240 S.W.3d at 318*; see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review.").

As the parties who sought attorney's fees and therefore carried the burden of proof, the Millers must demonstrate on appeal that the evidence conclusively established all vital facts in support of their claim as a matter of law. *See Rosenblatt*, 240 S.W.3d at 318*; see also MNC Spring Shadows, L.P. v. Kearney, L.L.C.*, No. 14-10-01180-CV, 2011 WL 4794949, at *2 (Tex. App.—Houston [14th Dist.] Oct. 11, 2011, no pet) (mem. op.); *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 786 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In reviewing a legal sufficiency challenge by the party who had the burden of proof at trial, the dispositive inquiry is whether the record establishes a proposition that contradicts the jury's finding as a matter of law. *Rosenblatt*, 240 S.W.3d at 318-19. Only then may we sustain the legal sufficiency challenge. *Id.* at 319.

A legal sufficiency challenge must be sustained when: (1) there is complete absence of a vital fact; (2) the rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; and (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810.

The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. When reviewing legal sufficiency of the evidence, we consider the evidence in the light most

favorable to the verdict and indulge every reasonable inference to support it. *Id*. at 822. We credit favorable evidence if a reasonable juror could do so and disregard contrary evidence if a reasonable juror could not credit it. *Id*. at 827. If the evidence falls within the zone of reasonable disagreement, we may not invade the role of the factfinder, who alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony. *Id*. at 822.

Jury Question 15 asked, without instructions or definitions, as follows:

**QUESTION 15:**

What is a reasonable fee for the necessary services of the Millers' attorney, stated in dollars and cents?

Answer with an amount for each of the following:

    a.    For representation in the trial court.

Answer:    0

    b.    For representation through appeal to the Court of Appeals.

Answer:    0

    c.    For representation at the petition for review stage in the Supreme Court of Texas.

Answer:    0

    d.    For representation at the merits briefing stage in the Supreme Court of Texas.

Answer:    0

    e.    For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer:    0

The Millers prevailed on their DTPA action against Debo Homes, and the jury awarded them $60,650 in damages. "Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees." Tex. Bus. & Com. Code Ann. § 17.50(d) (Vernon 2011); *see also Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998) ("Statutes providing that a party 'may recover,' 'shall be awarded,' or 'is entitled to' attorney fees are

not discretionary."). Therefore, "[a]s a factual matter, a zero award for attorney's fees would have been proper if the evidence: (1) failed to prove (a) that any attorney's services were provided; or (b) the value of the services provided; or (2) affirmatively showed that no attorney's services were needed or that any services provided were of no value." *Hubbard*, 76 S.W.3d at 787; *see also Meek v. Onstad*, 430 S.W.3d 601, 608 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The Millers' attorney Brian Crockett testified that he entered into a hybrid contingency contract with the Millers and worked on the Millers' case for about a year and a half. Under the contract, the Millers agreed to pay 45 percent of the verdict obtained after trial as attorney's fees. Crockett testified that he was licensed to practice law in 2010. Crockett testified that he and William Kanyha, another attorney in his firm who had practiced law for nearly two years, have handled construction defect cases throughout Texas and that a reasonable and necessary fee is $250 per hour in Fort Bend County for handling construction defect cases. He described the general services and pretrial work he and Kanyha performed. Although no bills were presented to the jury, Crockett testified that he and Kanyha worked 193.2 hours on the Millers' DTPA, breach of contract, and fraud in a real estate transaction claims — claims for which attorney's fees are recoverable. Crockett testified that he reviewed each entry and segregated the hours for each of the three claims; he stated that he and Kanyha worked 179.3 hours on the DTPA claim, 7.1 hours on the breach of contract claim, and 6.8 hours on the fraud in a real estate transaction claim. Crockett testified that out of the 179.3 hours spent on the DTPA claim, he worked 150.2 hours for a total of $37,500 and Kanyha worked 29.1 hours for a total of $7,275.

Regarding the trial itself, Crockett testified that he and Kanyha spent 10 hours each day during the four-day trial representing the Millers. Crockett testified that the time spent would equate to 80 hours for him and Kanyha at $250 per hour for a total of $20,000.

14

Crockett also opined regarding reasonable and necessary fees for appellate proceedings as follows: $20,000 in the event of an appeal to a court of appeals; $10,000 if a petition for review is filed in the Supreme Court of Texas; and $10,000 if the petition for review is granted.

Debo Homes contends that the jury's award of zero attorney's fees was proper because the Millers' "purported attorney's fees are of no value," Crockett's time spent on this case was "patently worthless," and "Crockett's services were unnecessary for the Millers to obtain their $60,650.00" when Debo Homes "offered the Millers all of their money back" before a lawsuit was filed. Debo Homes contends that it sent a letter to the Millers on May 29, 2013, offering them "all of their money back" so that litigation was unnecessary.

Contrary to Debo Homes's assertion, its May 29, 2013 letter did not unconditionally offer to give the Millers all their money back so that attorney services were unnecessary and of no value. In its May 29 letter, Debo Homes stated as follows: "If you are not happy with our service, you are free to terminate the contract with Debo Homes and we will refund you 100% of the money you have given us after we sell the house." The letter clearly stated that Debo Homes would refund the Millers' money only after it sold the house; thus, Debo Homes did not unconditionally offer the Millers their money back.

Debo Homes President and Owner Juan Carlos Hernandez testified that he would have written the Millers a check if they had asked for their money back but he never heard from the Millers and only heard from their attorney. This testimony contradicts Debo Homes's May 29 letter, in which Debo Homes told the Millers it would refund the money only after it sold the house. Hernandez's testimony also contradicts other trial testimony because he stated: "[W]e say when we close on the house we give you your money back. So we never talk to her. She never come to me say hey, you closing the house already. I need my money back. She come and approached me I guarantee I make a check right away

15

and give it to her and we done deal."

Additionally, Debo Homes modified its May 29 offer before it sold the house. It did so when its attorney sent a letter to the Millers' attorney on August 30, 2013, stating: "If [Debo Homes] is able to sell the home for at least $178,000.00, the sum your client agreed to pay plus all attorney[']s fees, brokers fees, interest paid, cost of necessary alterations to make the home marketable, and other expenses associated with mitigation of the damages, she may receive a reimbursement of the amount she paid to [Debo Homes] . . . . Any diminution of the amount that the home sells for will be directly reflected in the reimbursement."

Therefore, the record before us does not establish that the Millers did not need the services of their attorneys or that the services had no value.

Debo Homes also contends that the Millers are not entitled to any attorney's fees because (1) "Crockett's testimony on the hours billed is inherently inconsistent" and not free from contradiction; (2) "Crockett's testimony was impeached;" (3) "Crockett misrepresented to the jury that he is a 'construction defects' attorney" when the "main part of his practice [is] personal injury;" (4) the Millers' purported trial attorney's fees exceed the jury's damages award; (5) the Millers presented no billing records for attorney's fees and the "failure to produce attorney's bills affects the weight of a witness'[s] testimony on attorney's fees;" (6) "Crockett's testimony was cross-examined and challenged;" and (7) Debo Homes's attorney "presented rebuttal expert testimony on attorney's fees."

None of these considerations support a zero attorney's fee finding. Debo Homes's contentions may affect the amount of attorney's fees a jury may award, but they do not establish that no attorney's services were needed or that the services of the Millers' attorneys had no value. Further, it is clear from the record before us that some amount of attorney's services was necessary, and therefore some amount of fees was reasonable, to successfully represent the Millers in this case. If the amount the Millers requested at trial

16

was unreasonable, the appropriate response to the jury question on attorney's fees would have been to enter an amount that was reasonable — not a zero response indicating that no amount was reasonable. *See Hubbard*, 76 S.W.3d at 787; *see also Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009). We therefore find no evidence to support the jury finding that the value of the work necessary to represent the Millers in this case was either not proved or zero. *See Hubbard*, 76 S.W.3d at 787. We thus turn to the Millers' assertion that they proved their attorney's fees as a matter of law.

Generally, the testimony of an interested witness, such as a party to the suit, although not contradicted, does no more than raise a fact issue for the factfinder's determination. *Smith*, 296 S.W.3d at 547 (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). As an exception to this rule, when "the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Id.* (quoting *Ragsdale*, 801 S.W.2d at 882). "'The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so.'" *Id.* (quoting *Ragsdale*, 801 S.W.2d at 882).

Here, there was competing evidence regarding the amount of fees that would be reasonable and necessary in pursuing the Millers' suit. As we have outlined above, the Millers introduced evidence from one of their attorneys, Crockett, regarding the attorney's fees Crockett considered reasonable and necessary. Crockett testified that he and Kanyha practiced law for four and two years respectively and that $250 per hour is a reasonable and necessary fee in Fort Bend County for handling construction defect cases. Crockett testified that he and Kanyha worked pretrial 179.3 hours on the DTPA claim, 7.1 hours on the breach of contract claim, and 6.8 hours on the fraud in a real estate transaction claim.

Crockett testified that out of the 179.3 hours spent on the DTPA claim, he worked 150.2 hours for a total of $37,500, and Kanyha worked 29.1 hours for a total of $7,275. Crockett testified that the time spent on the case reflected the additional effort necessary to prepare and try the case; "every defense was asserted;" the parties "pretty much didn't have too many agreements;" the maximum amount of deposition time was used; and Debo Homes filed many motions.

With regard to trial, Crockett testified that he and Kanyha spent 10 hours each day during the four-day trial representing the Millers. Crockett testified that this would equate to 80 hours for him and Kanyha at $250 per hour for a total of $20,000. Also, Crockett testified that the following would be reasonable and necessary fees for appellate proceedings: $20,000 in the event of an appeal to a court of appeals; $10,000 if a petition for review is filed in the Supreme Court of Texas; and $10,000 if the petition for review is granted.

Conversely, Debo Homes attorney Craig Welscher testified that he, Nicholas Martinez, "another young attorney" named Cory, and paralegals have worked on the case for Debo Homes. He testified that he has practiced law for 33 years, Cory has practiced for six years, and Martinez has practiced for one year. Welscher opined that his law firm charges customary fees for Fort Bend County as follows: $350 per hour for partners; $250 per hour for senior associates; $150 per hour for "young associates;" and $100 per hour for paralegals.

Welscher testified that his firm charged Debo Homes $13,830 in attorney's fees for the pretrial work that was performed. He stated, "That consisted of roughly eight hours for me at 350, 53 hours for Nick at a hundred and fifty, eight hours for an assistant attorney at $250 an hour, and roughly 10 to 11 hours for a paralegal." Welscher testified that he and Martinez spent ten hours each on trial preparation and trial. He stated, "So with four days of Nick and I, my time being 350, his time being a hundred an[d] fifty, we anticipate about

18

$18,000 for preparation and working of this trial. Together with the 13,830 and 18, we are looking at charging o[u]r clients $31,830, for all this work." Welscher submitted billing records as Exhibit Number 19.

Welscher also opined regarding reasonable and necessary fees for appellate proceedings: $20,000 in the event of an appeal to a court of appeals; $5,000 if a petition for review is filed in the Texas Supreme Court; $20,000 to file a brief in the Texas Supreme Court; and $20,000 to present argument in the Texas Supreme Court. Welscher concluded his testimony by stating that, for this type of case, $31,830 constitutes a reasonable and necessary fee for pretrial and trial representation.

Based on the record before us, we conclude that the evidence does not conclusively establish a particular amount that was a reasonable and necessary amount of attorney's fees. Therefore, the trial court properly denied the Millers' request to award them $63,000 in trial attorney's fees and $40,000 in appellate fees. Accordingly, we will not reverse and render judgment in the Millers' favor on the specific amount of attorney's fees they sought in the trial court. Instead, we will reverse and remand this case for a new trial on attorney's fees. *See Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739-40 (Tex. 2009) (per curiam) (reversing judgment relative to jury's award of zero attorney's fees in absence of affirmative showing that no services were needed or services were of no value, but remanding for new trial on ground that amount of reasonable fees was not established as a matter of law).

Accordingly, we overrule the second issue and sustain the first and third issues.[3]

---

[3] Debo Homes also argued in its brief that the Millers are not entitled to a new trial on attorney's fees because there is "some evidence" that attorney's fees were unnecessary as Crockett (1) "admitted that attorney's fees were of no value;" and (2) "told the jury he was not retained by the Millers" when he "denounced his employment with them." We reject Debo Homes's contentions because they are unsupported by the record.

## CONCLUSION

We reverse the portion of the trial court's judgment awarding the Millers zero attorney's fees and remand this case for a new trial on attorney's fees. We reverse the trial court's judgment awarding the Millers pre-judgment interest in the amount of $3,663.92 and remand this case for a recalculation of pre-judgment interest consistent with this court's opinion. We reverse the trial court's judgment awarding the Millers post-judgment interest on the sum of $64,313.92 and remand this case for a recalculation of post-judgment interest consistent with this court's opinion. We affirm the trial court's judgment in all other respects.

/s/    William J. Boyce
Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise.